Filed 6/24/13  P. v. Prigmore CA

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE, | C071370 |
| Plaintiff and Respondent, | (Super. Ct. No. SF119645A) |
| v. | |
| THOMAS PRIGMORE, | |
| Defendant and Appellant. | |

A complaint filed February 24, 2012, charged defendant Thomas Prigmore with attempted burglary (Pen. Code,[1] §§ 459, 664; count 1), evading an officer while driving opposite the flow of traffic (Veh. Code, § 2800.4; count 2), harming a peace officer's dog (§ 600, subd. (a); count 3), and resisting or obstructing an officer (§ 148; count 4).  In March 2012, the prosecutor amended count 2 to allege driving in a wanton manner while eluding a pursuing peace officer.  (Veh. Code, § 2800.2.)  Defendant pleaded no contest to counts 1 and 2; counts 3 and 4 were dismissed in light of the plea.  Imposition of sentence was suspended and defendant was placed on probation for five years on the condition, among others, that he serve 180 days' incarceration with credit for six days.

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

1

In May 2012, defendant, represented by new counsel, filed a motion to withdraw his no contest pleas. The motion alleged that defendant's former counsel had rendered ineffective assistance when he failed to investigate the case and wrongly advised defendant to plead no contest, and defendant may have been under the influence of prescription medicine at the time of the pleas. Following a hearing, the trial court denied the motion to withdraw the pleas. Defendant obtained a certificate of probable cause.

On appeal, defendant renews his contention that his motion to withdraw the pleas should have been granted because his trial counsel had been ineffective and defendant's medical condition prevented him from making an intelligent and informed decision to enter the plea. We affirm.

## FACTS[2]

On February 21, 2012, at 10:20 p.m., defendant and his codefendant, Angela Smith,[3] were seen jumping over a fence onto the property of an irrigation company.[4] The duo appeared to be crouching down near some large PVC pipes. San Joaquin County Sheriff's Deputy Christopher Hill checked the perimeter of the business and saw a black

---

[2] Because the matter was resolved by plea and defendant waived referral to the probation department, our statement of facts is taken from the police reports.

[3] Smith is not a party to this appeal.

[4] This court granted defendant's request to augment the record with the police reports, which had been introduced in the trial court as Defendant's Exhibit A. The exhibit was transmitted to this court under seal and filed as a clerk's augmented transcript. This court granted defendant's request to obtain a copy of the sealed material. The Attorney General made no similar request. Instead, the statement of facts in the respondent's brief asserts that the augmented record "was not sent to respondent." Accordingly, the Attorney General has not addressed the contents of Defendant's Exhibit A.

In his reply brief, defendant notes that the trial court's proof of service for the clerk's augmented transcript reflects service upon the Attorney General. But the transcript notes that Defendant's Exhibit A is confidential and is submitted separately. Thus, the proof of service does not establish that the Attorney General received the sealed material.

truck leave the area at high speed. A high speed chase ensued, with the truck traveling at times of speeds approximately 80 to 90 miles per hour and sometimes traveling in the opposite lane of traffic. After an approximately eight- and one-half-mile pursuit, the truck crashed into a ditch and the suspects fled in different directions. With help from a California Highway Patrol (CHP) helicopter and a police dog, defendant and Smith were taken into custody. Both suspects had been bitten by the dog and required hospital treatment.

Deputy Hill advised defendants of their constitutional rights. Smith told him that defendant had been driving. When asked why they were at the irrigation company, defendant told Deputy Hill they were "just fooling around."

Deputy Hill reported that fellow deputies spoke with an employee of the irrigation company who said that nothing was missing from the business and the property had not been damaged. The employee added, "it appeared that the [suspects] were going to attempt to gain access to a [C]onex box on the southwest end of the business."

A CHP 180 Vehicle Report was completed that listed the "Driver's Name" as "Prigmore, Thomas" and states: "[Suspect] was seen on video entering the yard of [the irrigation company]. This was reported as a burglary. [Suspect] fled from officers [at a] high rate of speed . . . . [Suspect] and passenger fled from vehicle and were located [and] taken into custody." The report does not indicate how it was determined that defendant, and not Smith, was the driver.

DISCUSSION

I

*Motion to Withdraw No Contest Plea*

Defendant contends the trial court abuses its discretion when it denies a motion to withdraw a plea where the evidence shows the absence of a free, voluntary, and informed plea. He argues (1) his trial counsel failed to conduct an adequate investigation and incompetently advised him to enter the pleas; and (2) medication prescribed for the dog

3

bite affected his thinking so that his pleas were not entered intelligently and voluntarily. Neither point has merit.

*Background*

Defendant's offense occurred on February 21, 2012, and he entered his plea a month later, on March 27, 2012. The prosecutor's statement of factual basis for the plea did not include facts gleaned from the deputies' conversation with the irrigation company employee. The statement did not define the term "[C]onex box" for the court or recite the evidence that defendant and Smith were attempting to gain access to the "[C]onex box."

At the hearing on the motion to withdraw the plea, defendant's former counsel testified that he was retained to represent defendant on March 19, 2012, and he met defendant for the first time on March 27, 2012. In the interim, counsel's assistant interviewed defendant for "basic information" and took "some notes" for the file. The notes did not contain information about the crimes, but counsel obtained copies of the crime reports prepared by the police. Counsel also reviewed defendant's criminal record. Counsel was aware that defendant did not own the truck used in the crimes and that the owner was Emily Kuhn. Counsel did not know Kuhn's relationship with defendant and Smith or how they had obtained the truck from her.

Former counsel had not viewed the video tapes made by the security camera at the irrigation company, but he had knowledge of their contents from the police reports and from his conversation with defendant. Former counsel asserted that Smith's statement was "the only evidence" in the crime report that showed defendant was driving. The prosecutor's single-question cross-examination did not establish whether former counsel knew that the CHP 180 Vehicle Report had also identified defendant as the driver.

On March 27, 2012, former counsel met with the trial court and the prosecutor. The prosecutor's original offer had been for defendant to plead to the attempted burglary and the amended Vehicle Code violation for a one-year local sentence. Ultimately, the

4

parties agreed that defendant would plead to those counts in exchange for a six-month sentence. After meeting with the court and the prosecutor, former counsel met with defendant. They discussed the police reports, albeit not in detail; and they discussed Smith's statement that defendant was driving the car. Former counsel explained to defendant that his was an "early resolution" case, which meant that the current offer would not remain "on the table" if defendant did not accept it at that time. Former counsel explained that the original Vehicle Code allegation had been changed to a less serious offense, explained what the punishment would be, and advised that it was defendant's decision whether to accept the offer.

Former counsel testified that he had discussed the crime of attempted burglary with defendant. Former counsel agreed with present counsel's suggestion that the police reports had not mentioned any structure near where defendant and Smith had been seen on the private property or mentioned that they had approached any structures. The prosecutor's single-question cross-examination did not establish whether former counsel knew that the police reports included the employee's observation that defendant and Smith were about to "attempt to gain access to," i.e., enter, a "[C]onex box." (§§ 458, 459.)

Former counsel testified that defendant had told him "he may not have been" driving the truck. Former counsel explained that, if defendant was not the driver, that would be a defense to the Vehicle Code count.

Former counsel explained to defendant that, if he chose to reject the "early resolution" offer, further investigation of the case "probably" would be necessary. But counsel believed he had sufficient information to properly advise defendant with respect to the "early resolution" offer. Former counsel had received $500 for his legal services, which included his services at the time of the plea and his assistant's earlier appearance for him at the arraignment.

Defendant testified that he had first met former counsel on the day of the plea. They spoke in the hallway outside the courtroom for two to three minutes. Former counsel went into chambers, then returned and told defendant what the offer was; their conversation lasted about a minute. Former counsel advised defendant, "you should take the deal because of the charges." Former counsel had not told defendant he "had to" take the deal, but he also never expressly told defendant it was his choice whether to do so. Defendant never told former counsel he was driving the truck that night. In fact, former counsel never asked.

Defendant testified that, at the time of the plea, he had been taking the pain medication Norco, or hydrocodone, which "makes you drowsy, sleepy and relaxes you." The medication prevented him from understanding words being said to him. Thus, when he pled, he "didn't quite understand what was going on there." He claimed former counsel had said to just watch him and to say yes whenever counsel nodded during the proceeding. Defendant claimed he did this as the judge was advising him and asking questions because the judge was talking so fast.

Defendant admitted that he had told the court he understood the charges, he was pleading voluntarily, and no threats or promises had been made to him outside the plea agreement. Defendant could not explain why he had claimed to have understood when, in fact, he did not understand.

Defendant's new counsel argued that defendant was operating under the mistake or ignorance engendered by former counsel's failure to investigate the case. In his view, a proper investigation would have revealed "defenses to . . . the attempted burglary" and would have revealed the lack of admissible evidence, other than from the codefendant, that defendant had been driving the car.

*Analysis*

"Section 1018 provides, in part: 'On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty

to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice.' The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. [Citations.] 'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.' [Citation.] The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. [Citations.] 'A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' [Citations.] 'Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.' [Citation.] [¶] To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. [Citation.]" (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.)

*Inadequate Investigation*

In the "Summary" section of his opening brief, defendant first contends former counsel "admitted that he had not done any investigation in this case . . . ." This claim disregards the record. Former counsel testified that he reviewed the police reports, the CHP 180 Vehicle Report, and defendant's criminal record; spoke with defendant; and determined who owned the truck. Former counsel believed the police reports had provided sufficient information to address the "early resolution" offer. Thus, his investigation had not extended beyond examining those materials. But if defendant chose not to accept the early resolution, it "probably" would be necessary to investigate whether defendant could defend on the basis that he was not the driver of the car.

Defendant relies on *People v. Jones* (2010) 186 Cal.App.4th 216 for the proposition that former counsel had the duty " 'to make reasonable investigations *or to*

7

*make a reasonable decision that makes particular investigations unnecessary.' "* (*Id*. at p. 238, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 691 [80 L.Ed.2d 674, 695]; italics added.) Defendant's reliance is misplaced. Because his case had been designated for "early resolution," which meant the current offer would not remain "on the table" if it was not accepted that day, former counsel did not have the luxury of first conducting a lengthy investigation and then evaluating whether to accept the offer. Counsel's only option was to determine whether the offer was "a reasonable decision" under all the circumstances. (*People v. Jones, supra*, at p. 238.) Because he and defendant concluded it was, their decision made further "particular investigations unnecessary." (*Ibid*.)

Defendant also relies on *People v. Ledesma* (1987) 43 Cal.3d 171, which requires counsel to "make a rational and informed decision on strategy and tactics founded on adequate investigation and preparation." (*Id*. at p. 215.) But *Ledesma*, a capital case, had no occasion to hold, and did not hold, that the necessarily truncated investigation that precedes acceptance of an "early resolution" offer is inadequate as a matter of law.

Defendant next asserts former counsel "apparently did not advise [him] of any defenses . . . ." But former counsel testified that he had discussed the crime of attempted burglary with defendant. Neither defendant nor former counsel suggested that, although they had discussed the crimes, their discussion had omitted any discussion of defenses. No error is shown.

Defendant claims his former counsel "never determined whether there was an actual basis for a charge of attempted burglary. Nothing in the [police] report indicated the presence of a building on the property, any movement by the two people toward a building, entry or attempted [entry] into a building, or the presence or use of any tool which could be used to force entry into a building." Defendant's reading of the police report is not correct.

8

The police report stated that deputies had spoken with a witness who stated "it appeared that the [suspects] were going to attempt to gain access to a [C]onex box on the southwest end of the business."

A Conex box is an intermodal container for shipping and storage. (Wikipedia, The Free Encyclopedia <http://en.wikipedia.org/wiki/Conex> [as of June 14, 2013]). An intermodal container is a standardized reusable steel box for the storage and movement of materials and products within a global containerized intermodal freight transport system. (Wikipedia, The Free Encyclopedia <http://en.wikipedia.org/wiki/Intermodal_container> [as of June 14, 2013].) (See also *People v. Bailey* (2012) 54 Cal.4th 740, 744-745.)

Section 459 provides in relevant part: "Every person who enters any . . . locked or sealed cargo container, whether or not mounted on a vehicle . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." Section 458 explains that a "cargo container" is a receptacle with all of the following characteristics: "(a) Of a permanent character and accordingly strong enough to be suitable for repeated use. [¶] (b) Specially designed to facilitate the carriage of goods, by one or more modes of transport, one of which shall be by vessels, without intermediate reloading. [¶] (c) Fitted with devices permitting its ready handling, particularly its transfer from one mode of transport to another. [¶] (d) So designed to be easy to fill and empty. [¶] (e) Having a cubic displacement of 1,000 cubic feet or more." (§ 458.)

Deputy Hill, who authored the police report, may have understood that, under proper circumstances, a Conex box could be the object of a burglary. Thus, contrary to defendant's argument, the police report *did* indicate a possible factual basis for a charge of attempted burglary. Moreover, the report--which did not describe the Conex box in detail or address the statutory elements of a cargo container--provided a basis for former counsel to conclude "early resolution" was preferable to protracted litigation of the attempted burglary.

9

Because the prosecutor did not tender the Conex box theory to the trial court, either in his statement of factual basis or in his cross-examination of former counsel on the motion to withdraw the plea, former counsel never addressed whether he had considered the theory and its host of factual issues. But his failure to consider the theory could not have been prejudicial.

Proper consideration of the police report could not have assured former counsel that there was *no* factual basis for a charge of attempted burglary. Thus, proper consideration of the report would not have caused defendant to decline to enter his plea. (*People v. Breslin, supra,* 205 Cal.App.4th at pp. 1415-1416.)

Defendant claims his former counsel's investigation was inadequate because he "apparently never ascertained who was driving" the truck. In the trial court, his new counsel argued, "there's some evidence in the report based solely on the co-defendant's statement, which was not going to be admissible unless some information would prove [*sic*]." The reference to what "some information would prove" suggests counsel was raising an accomplice corroboration issue (§ 1111), as opposed to an *Aranda-Bruton* confrontation issue.[5] "The testimony of accomplices must be corroborated by 'such other evidence as shall tend to connect the defendant with the commission of the offense.' [Citation.] . . . ' "Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense. [Citations.]" [Citation.] The evidence "is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." [Citation.]' [Citation.]" (*People v. Whalen* (2013) 56 Cal.4th 1, 55.)

New counsel's corroboration argument overlooked the CHP 180 Vehicle Report that was attached to the police report. The CHP 180 Vehicle Report lists the "Driver's

---

[5]  *People v. Aranda* (1965) 63 Cal.2d 518; *Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476].

Name" as "Prigmore, Thomas" and states: "[Suspect] was seen on video entering the yard of [the irrigation company]. This was reported as a burglary. [Suspect] fled from officers [at a] high rate of speed . . . . [Suspect] and passenger fled from vehicle and were located [and] taken into custody."[6]

The appellate record does not suggest the officer who completed the CHP 180 Vehicle Report based identification of defendant as the driver solely on the statements of Smith as opposed to, e.g., the position of the stopped truck and the direction in which each suspect fled. The officer did not reveal their methodology; and Deputy Hill, who obtained Smith's statement, did not report that he had conversed with the officer before the latter prepared the CHP 180 Vehicle Report.

Thus, the record does not suggest that the CHP 180 Vehicle Report is inadequate to corroborate the statements of Smith. Former counsel's failure to pursue the issue of who was driving the truck could not have been prejudicial. (*People v. Whalen*, *supra*, 56 Cal. 4th at p. 55; *People v. Breslin, supra,* 205 Cal.App.4th at pp. 1415-1416.)

In light of the CHP 180 Vehicle Report, which appears to reflect an unbiased analysis of the offenses, defendant cannot show prejudice from the trial court's exclusion of his self-serving statement to his original counsel (public defender) that he was not the driver of the truck. New counsel made an offer of proof that the public defender "would testify that [defendant] told him [in] no uncertain terms that he was [not[7]] the driver . . . ." The trial court excluded the statement, remarking it did not "even know if that is

---

[6] The CHP 180 Vehicle Report's narrative appears to continue onto a page that is not in the appellate record.

[7] The bracketed word "not" does not appear in the reporter's transcript. Defendant's opening brief states that his appellate counsel discussed the matter with a Deputy Attorney General who agreed the transcript is in error or defendant's new counsel misspoke.

relevant." There is no reasonable probability the court would have rejected the CHP 180 Vehicle Report in favor of defendant's statement to his public defender.

Defendant complains that former counsel "never ascertained . . . what . . . relationship [defendant] had, or did not have, with the owner of the [truck], and whether the owner had authorized [him] or [Smith] to use the [truck]." But these facts remain unknown on appeal. Defendant does not explain how the unknown facts could have affected his decision to enter his plea. No prejudice appears.

*Defendant's Medical Condition*

Defendant claims medication he was taking one month following his dog bite injury rendered his plea less than knowing, intelligent, and voluntary. The record contains only defendant's self-serving testimony that he "didn't quite understand what was going on" at the plea proceeding because of the medication. The trial court was not required to accept that testimony.

At the plea proceeding, there was no indication that defendant did not understand what was happening. Defendant said it was his decision to accept the plea offer, and the record shows it was a favorable offer given defendant's potential exposure. At the hearing on the motion to withdraw the plea, defendant admitted he had told the court that he understood the charges, that he was pleading voluntarily, and that no threats or promises had been made to him outside the plea agreement. Defendant could not explain why, at the time of the plea, he had assured the court that he understood what was going on even though, as he later claimed, he did not understand because of the speed of the proceedings and the effect of his medication.

In denying the motion to withdraw the plea, the trial court impliedly found that defendant's claim to have not understood the proceedings was not credible. Substantial evidence supports the implied finding, and this court must adopt the implied finding as its own. (*People v. Breslin, supra,* 205 Cal.App.4th at pp. 1415-1416.) The motion to withdraw the pleas was properly denied.

12

## II

### *Modification of the Judgment*

In its oral pronouncement of fines and fees, the trial court stated, "[t]he fine is $442, you can make payments on that when you get out; there's a $240 probation revocation fine, which is stayed."

The clerk's minutes state that defendant is to pay a $240 restitution fine plus $24 administrative fee (§ 1202.4), a $240 restitution fine suspended unless probation is revoked (§ 1202.44), an $80 court operations fee (§ 1465.8, subd. (a)(1)), and a $60 court facilities assessment (Gov. Code, § 70373).

Defendant correctly notes that the *unstayed* fines and fees total $404, not the $442 orally pronounced by the trial court. We shall modify the judgment accordingly.

### DISPOSITION

The judgment is modified to impose a $240 restitution fine plus $24 administrative fee, a $240 restitution fine suspended unless probation is revoked, an $80 court operations fee, and a $60 court facilities assessment. As so modified, the judgment is affirmed.


    BLEASE    , J.


We concur:


    RAYE    , P. J.


    BUTZ    , J.


13