[No. A132443. First Dist., Div. Four. May 16, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
JEAN KAROL BRESLIN, Defendant and Appellant.

1410

## COUNSEL

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Julia Y. Je, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SEPULVEDA, J.**[*]—Jean Karol Breslin appeals a judgment following her guilty plea to one count of corporal injury to a spouse or cohabitant (Pen. Code,[1] § 273.5, subd. (a)). She contends that the trial court abused its discretion in denying her motion to withdraw her plea because her trial counsel provided ineffective assistance of counsel by failing to discover prior to the entry of her plea that the victim had attempted to recant his statement to the police. We affirm.

### I. BACKGROUND

#### A. *Facts*

Because the conviction was based on a plea, the following facts are derived from the probation report:

---

[*] Retired Associate Justice of the Court of Appeal, First Appellate District, Division 4, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further undesignated statutory references are to the Penal Code.

On March 23, 2011, victim Richard A. called the Eureka Police Department to report that Breslin had assaulted him in their home. Breslin and the victim had been in a dating relationship for approximately 10 years. Upon arriving at the scene, a police officer saw Breslin walking in the street in front of the residence. According to the officer, Breslin "displayed objective signs of intoxication." She was seen outside chasing after her dog.

When the officer contacted the victim, he could see that the victim had dried blood on his neck starting from the back of his right ear. The victim explained that Breslin had "resumed alcohol use a few days earlier, after having abstained from it for a couple of weeks after her last release from custody." On the day of the incident, Breslin had accused the victim of taking her money. Breslin later apologized to the victim, stating that she had found the money. However, Breslin then "entered the couple's bedroom and began 'tearing the room up,' " again accusing the victim of stealing her money. As the victim entered the bedroom to take his medication, Breslin "grabbed him by the face with both of her hands and 'clawed' him. The victim tripped over one of [Breslin's] legs and fell to the ground." The victim told Breslin he was going to call the police, and Breslin left the residence.

The couple's roommate, George Lamont Danielson, Sr., reported that the victim and Breslin had been arguing periodically throughout the day. Although Danielson did not see Breslin assault the victim, "he did see blood running down the victim's neck when the victim burst into his room to use the telephone to call the police."

According to the probation report, in post-*Miranda*[2] statements, Breslin denied that she was intoxicated. She further "denied injuring the victim, and stated his wound was self-inflicted. She believed she was the true victim because the victim had pushed her to the ground. She indicated she could not hurt the victim because she was half his size." The arresting officer indicated that "throughout the entire investigation [Breslin] had to be repeatedly instructed to stop talking." At one point, an officer had to "grab [Breslin] by the arm and physically sit her down on a chair." She was described as having " 'a belligerent attitude which fluctuated without reason.' "

According to the probation report, the current offense was Breslin's "third domestic violence incident with the same victim . . . within just over a year." A records check revealed there was a current emergency protective order

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

against Breslin with the victim listed as the protected party. The oncall judge was contacted, and an additional emergency protective order, as well as an immediate " 'Move Out' " order, was issued against Breslin.

## B. *Procedural History*

On March 25, 2011, a criminal complaint was filed in Humboldt County Superior Court, charging Breslin with corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count one). The complaint also charged Breslin with misdemeanor counts of disobeying a domestic relations order (§ 273.6, subd. (a); count two), resisting or obstructing arrest (§ 148, subd. (a)(1); count three), and public intoxication (§ 647, subd. (f); count four). The complaint further alleged as to count one that Breslin had suffered a prior conviction under section 273.5, subdivision (a), occurring on February 2, 2010.

On April 4, 2011, pursuant to a plea agreement, Breslin entered a plea of guilty to count one in exchange for a grant of probation. The remaining charges were dismissed and sentencing was initially set for May 2, 2011. On April 27, 2011, the victim met with district attorney investigator Tom Cooke at the Humboldt County District Attorney's Office. In his investigation report, Cooke provided the following "brief summary" of his conversation with the victim: "Richard said on the night of the incident, he tripped in the hallway and as he was falling he grabbed onto [Breslin] and she fell on top of him. He said this was accidental. He said she has been violent in the past. Richard did not wish to press charges." Cooke concluded the report by stating that he had been subsequently informed by the deputy district attorney prosecuting the case that "[Breslin] had already pled guilty in this matter."

On May 25, 2011, Breslin simultaneously moved to continue the sentencing hearing then scheduled for May 27, 2011, and to withdraw her guilty plea. In support of the motions, Breslin submitted a sworn declaration of the victim, dated May 23, 2011, in which he averred that: "On or about March 23, 2011, I reported to the police that . . . Breslin attacked me. The incident between the two of us did not happen that way. In fact what happened is I tripped in the hallway and when I started to fall I grabbed onto . . . Breslin causing her to fall on top of me causing injury to me. The fall was accidental." He further averred that he had "wanted to explain this to the district attorney." According to the victim's declaration, he went to the district attorney's office to speak to someone, but was told by the receptionist that "no one was available"; the victim never heard back from the district

attorney. Although the victim could not "recall exactly when" he went to the district attorney's office, he stated, "I know it was on the same day as I went to court in the afternoon when [Breslin] was supposed to be in court. It was about a week or so after she was arrested."

In her motion to withdraw her plea, Breslin argued that ineffective assistance of counsel prevented her from making an intelligent and knowing decision about whether to waive her right to a jury trial, thus justifying the withdrawal of her guilty plea. According to Breslin, "[h]ad her former counsel simply inquired of the complaining witness at one of the hearings prior to the plea, or asked his investigator to speak with the complaining witness, he would have discovered the retraction, and passed that along to [her]."

Finding no good cause and no ineffective assistance of counsel, the court denied Breslin's motion to withdraw her guilty plea. The court found Breslin had violated probation by the present offense and revoked probation. The court then reinstated probation for a period of three years. The court also issued a domestic protective order prohibiting Breslin from annoying, threatening, harassing, or battering the victim.

## II.   DISCUSSION

Breslin contends that the trial court abused its discretion by denying her motion to withdraw her guilty plea. She argues her plea was not a knowing and intelligent waiver of her constitutional rights because, at the time of the plea, she was unaware that the victim had fundamentally changed his account of the incident. She further claims her plea was not made voluntarily because her former appointed counsel failed to investigate her case and failed to discover—prior to her plea—that the victim had tried to recant his statements about the incident.

A.   *Denial of Motion to Withdraw Guilty Plea*

Section 1018 provides, in part: "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her

guilty plea. (*Ibid.*; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1457 [2 Cal.Rptr.2d 670].) "A plea may not be withdrawn simply because the defendant has changed his [or her] mind." (*Nance*, at p. 1456.) The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [69 Cal.Rptr.2d 784, 947 P.2d 1321]; *Nance*, at p. 1457.) "A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (*Nance*, at p. 1456; see *Fairbank*, at p. 1254 ["A decision to deny a motion to withdraw a guilty plea . . . is final unless the defendant can show a clear abuse of [the trial court's] discretion."].) "Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*Fairbank*, at p. 1254.)

■ To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1207–1208 [38 Cal.Rptr.2d 592].) The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake. (*In re Moser* (1993) 6 Cal.4th 342, 352 [24 Cal.Rptr.2d 723, 862 P.2d 723].)

With these principles in mind, we find no basis to disturb the trial court's exercise of discretion in denying Breslin's motion to withdraw her guilty plea.

Breslin contends that she presented "uncontroverted evidence" to show that at the time of her plea she was unaware of "crucial facts" that would have provided her with "a strong, potentially meritorious defense to the charged crime." Breslin's argument is not supported by the record. The "evidence" of such "crucial facts" is contained in the victim's declaration, in which he stated that he wanted to talk to the district attorney about recanting his statement soon after Breslin was arrested, but no one was available to speak with him. The timing of the victim's eventual recantation is somewhat suspect. Indeed, the first time anyone learned of the victim's new version of the incident was *after* Breslin had entered her guilty plea and just days before the then scheduled sentencing hearing. There is no evidence anywhere in the record, and certainly not clear and convincing evidence, that Breslin had a potentially meritorious defense at the time she pleaded guilty to the charged crime. Breslin's argument ignores the obvious—the victim's undisclosed change of heart was not known until *after* Breslin entered her guilty plea.

Breslin's circumstances are analogous to those in *People v. Watts* (1977) 67 Cal.App.3d 173 [136 Cal.Rptr. 496]. There, defendant Watts entered a guilty plea because, as he later explained, he assumed that his codefendant was going to testify against him at trial. (*Id.* at p. 183.) After Watts entered his plea, the codefendant testified at the trial of a second codefendant, and did not implicate Watts. (*Ibid.*) The second codefendant was acquitted. (*Ibid.*) Watts argued that he was operating under "mistake of fact" when he entered his guilty plea. (*Ibid.*) The court gave little credence to this theory, stating "[t]his is hardly the type of mistake, ignorance or inadvertence which would permit the withdrawal of a guilty plea." (*Ibid.*) We reach the same conclusion in the present case.

■ In the related context of a motion for a new trial, "[t]he offer of a witness, after the trial, to retract his [or her] sworn testimony is always looked upon with suspicion." (*People v. Langlois* (1963) 220 Cal.App.2d 831, 834 [34 Cal.Rptr. 116]; see *People v. McGaughran* (1961) 197 Cal.App.2d 6, 17 [17 Cal.Rptr. 121.) Here, the trial court was right to view the victim's new statements with skepticism. The instant case was the third reported incident of alleged violence perpetrated by Breslin against this victim. Indeed, at the time of the incident there was a current emergency protective order against Breslin with the victim listed as the protected party. Further, even in his statement to investigator Cooke, the victim admitted that Breslin had been violent in the past.

■ Contrary to Breslin's assertion, the trial court's decision to place little weight on the victim's recantation was, in fact, relevant in determining whether she met her burden of establishing a mistake of fact regarding the existence of a meritorious defense at the time she entered her guilty plea. All decisions to plead guilty are heavily influenced by difficult questions as to the strength of the prosecution's case and the likelihood of securing leniency. (See *People v. Hunt* (1985) 174 Cal.App.3d 95, 103 [219 Cal.Rptr. 731].) " 'Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his [or her] decision.' " (*Id.* at p. 103, quoting *Brady v. United States* (1970) 397 U.S. 742, 756–757 [25 L.Ed.2d 747, 90 S.Ct. 1463].)

Although the prosecution's case might have been slightly weaker than it appeared when Breslin pleaded guilty, this does not invalidate her plea. It might be a different matter if there were actually persuasive, independent evidence the victim had committed perjury or if the prosecution had withheld

critical evidence. But we emphasize that there is good reason to believe the victim's new account was the product of latent misgivings about Breslin facing criminal punishment.

■ After evaluating the totality of the circumstances, the trial court acted well within its discretion in ruling that Breslin failed to meet her burden by clear and convincing evidence to show that she entered her guilty plea under mistake, ignorance, or any other factor overcoming her exercise of free judgment.

## B. Ineffective Assistance of Counsel

Breslin further contends that her plea was entered involuntarily due to her prior counsel's rendering ineffective assistance of counsel by failing to interview the victim before she entered her guilty plea.

### 1. Legal Principles

■ A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685 [80 L.Ed.2d 674, 104 S.Ct. 2052] (*Strickland*); *People v. Pope* (1979) 23 Cal.3d 412, 422 [152 Cal.Rptr. 732, 590 P.2d 859] (*Pope*), disapproved on another ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10 [25 Cal.Rptr.2d 867, 864 P.2d 40].) To show denial of that right, a defendant must show (1) his or her counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defendant. (*Strickland*, at pp. 687, 691–692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 [233 Cal.Rptr. 404, 729 P.2d 839] (*Ledesma*); *Pope*, at p. 425.) To show prejudice, a defendant must show there is a reasonable probability that he or she would have received a more favorable result had his or her counsel's performance not been deficient. (*Strickland*, at pp. 693–694; *Ledesma*, at pp. 217–218.) It is the defendant's burden on appeal to show that he or she was denied effective assistance of counsel and is entitled to relief. (*Ledesma*, at p. 218.) "[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence." (*Ibid.*)

■ The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. (*Hill v. Lockhart* (1985) 474 U.S. 52, 58 [88 L.Ed.2d 203, 106 S.Ct. 366] (*Hill*).) "Where, as here, a defendant

is represented by counsel during the plea process and enters his [or her] plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " (*Id.* at p. 56.) "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." (*Id.* at p. 59, fn. omitted.)

### 2. *Counsel Did Not Act Unreasonably*

Breslin's motion to withdraw was premised on a mistake of fact theory, in which she claimed her former counsel was ineffective in failing to interview the victim prior to her guilty plea. The record, however, does not support the claim that her attorney "failed to investigate either facts or law in the manner required of a reasonably competent diligent attorney." (*People v. Knight* (1987) 194 Cal.App.3d 337, 345 [239 Cal.Rptr. 413].) It is well established that a defendant who raises ineffective assistance of counsel on appeal "must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519].)

Here, Breslin's motion did not include a declaration from her former attorney regarding what steps he had undertaken to investigate possible defenses to the charges. Thus, the record does not indicate why counsel did not pursue the possibility of the victim recanting his statement to the police. Based on the facts Breslin had been previously convicted of domestic abuse against the victim (§ 273.5, subd. (a)) in February 2010, and that the trial court had issued a domestic violence protective order in that case, as well as another protective order stemming from the current offense, it was entirely reasonable for counsel not to interview the victim. Moreover, given the history of domestic violence by Breslin, there was no indication that the victim was going to recant his statement. In light of the available facts, we conclude counsel's performance was not deficient. (See *People v. Stanley* (2006) 39 Cal.4th 913, 954 [47 Cal.Rptr.3d 420, 140 P.3d 736].)

The circumstances here bear no resemblance to those in *In re Williams* (1969) 1 Cal.3d 168 [81 Cal.Rptr. 784, 460 P.2d 984], a case upon which Breslin relies. There, counsel advised a plea of guilty to felony forgery charges where the offenses were legally punishable only as misdemeanor credit card offenses. (*Id.* at pp. 172–173.) The defendant had an absolute defense to the charges under the doctrine expressed in an earlier appellate case, *People v. Swann* (1963) 213 Cal.App.2d 447 [28 Cal.Rptr. 830], of which counsel was inexplicably unaware. (*Williams*, at p. 173.) Counsel's failing withdrew an obviously meritorious defense without tactical, or any, justification. (*Williams, supra*, 1 Cal.3d at p. 177.) Here, in contrast, counsel's failure to interview the victim was a reasonable tactical decision based on the history of domestic violence and existing protective orders.

Equally distinguishable is *People v. Harvey* (1984) 151 Cal.App.3d 660 [198 Cal.Rptr. 858], where the appellate court reversed the denial of a motion to withdraw a guilty plea because defense counsel failed to inform the defendant of a psychiatric report concluding that the defendant lacked the capacity to premeditate or form malice aforethought and those findings, if believed by a trier of fact, would have precluded any conviction of first or second degree murder. (*Id.* at p. 668.) Unlike in *Harvey*, the trial court was without a factual predicate to conclude that Breslin's former counsel rendered a deficient performance.

For all of the reasons discussed *ante*, the trial court properly concluded Breslin could not demonstrate that she received ineffective assistance of counsel.

### 3. *No Prejudice*

Even assuming that counsel acted unreasonably by not interviewing the victim—and that Breslin thus has satisfied the performance prong of her ineffective assistance claim (*Strickland, supra*, 466 U.S. at pp. 687–688), to prevail Breslin must additionally demonstrate prejudice, and this, we conclude, she has failed to do.

■ "The test for prejudice that is relevant in light of the preceding is well established. In *Hill, supra*, 474 U.S. at pages 58–59 . . . , the United States Supreme Court explained that a defendant who pled guilty demonstrates prejudice caused by counsel's incompetent performance in advising him [or her] to enter the plea by establishing that a reasonable probability exists that, but for counsel's incompetence, he [or she] would not have pled guilty and would have insisted, instead, on proceeding to trial. [Citations.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 253 [105 Cal.Rptr.2d 431, 19 P.3d 1171], abrogated on another ground in *Padilla v. Kentucky* (2010) 559 U.S. ___, ___ [176 L.Ed.2d 284, 130 S.Ct. 1473, 1484].)

██ Here, Breslin avers, if counsel had discovered that the victim wanted to recant his statement, she would not have pleaded guilty and would have elected to be tried. "In determining whether a defendant, with effective assistance, would have accepted [or rejected] the plea offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement . . . [regarding whether] with competent advice he or she *would* [or would not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938 [8 Cal.Rptr.2d 713, 830 P.2d 747].)[3]

Had Breslin proceeded to trial on the domestic violence charge and the three misdemeanor charges, and had the prosecution chosen to seek maximum penalties, Breslin faced a probation violation and time in state prison. The plea bargain, on the other hand, assured Breslin a grant of probation and dismissal of the three misdemeanor charges.

Based upon our examination of the entire record, including the prior history of domestic violence by Breslin against the victim, the timing and questionable credibility of the victim's recanting statements, the statements by the arresting officer and by the roommate that support the victim's original report, Breslin fails to persuade us that it is reasonably probable she would have forgone the distinctly favorable outcome she obtained by pleading, and instead insisted on proceeding to trial and risked prison time, but for counsel's alleged incompetence. (See *Hill, supra,* 474 U.S. at pp. 58–59; *In re Resendiz, supra,* 25 Cal.4th at p. 254; *In re Alvernaz, supra,* 2 Cal.4th at p. 934.)

---

[3] In the twin decisions of *Lafler v. Cooper* (2012) 566 U.S. ___, ___ [182 L.Ed.2d 398, 132 S.Ct. 1376] and *Missouri v. Frye* (2012) 566 U.S. ___, ___ [182 L.Ed.2d 379, 132 S.Ct. 1399], the United States Supreme Court recently addressed the situation of where a defendant seeks a remedy when inadequate assistance of counsel caused the *nonacceptance* of a plea offer and further proceedings led to a less favorable outcome. In the appeal before us, neither party cites these cases as they were issued after briefing in the instant appeal was complete. In any event, in *Lafler* and *Frye,* unlike here, the parties agreed that counsel's performance was deficient and the sole question related to prejudice. Moreover, these cases do not alter the analysis in *Hill, supra,* 474 U.S. 52 regarding ineffective assistance that leads to a defendant *accepting* a plea.

## III.   DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Rivera, J., concurred.