Filed 1/22/14  P. v. Chuc CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063766 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD240347) |
| JUAN ALBERTO CHUC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia Eyherabide, Judge.  Affirmed.

Law Office of Narciso Delgado-Cruz and Narciso Delgado-Cruz for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

Juan Chuc entered a negotiated guilty plea to three lewd act counts.  (Pen. Code, § 288, subd. (a).)  Less than one month later, Chuc moved to withdraw his plea, but the

court denied the motion. On appeal, Chuc contends the court abused its discretion in denying his motion. We reject this contention and affirm.

FACTUAL AND PROCEDURAL SUMMARY

Chuc was charged with seven counts of committing a lewd act upon a child under the age of 14; the counts pertained to two victims. In a plea agreement, Chuc agreed to plead guilty to three of the counts in exchange for the dismissal of the remaining counts and a 12-year sentence. Chuc signed and initialed the standard change-of-plea form, which included his statement that he understood his conviction would be "a serious/violent felony ('strike') resulting in . . . substantially increased penalties," including "a term in State Prison in any future felony case."

At the plea hearing, Chuc was represented by counsel and was assisted by a Spanish interpreter and a Quiche interpreter, Policarpo Chaj. Chuc was born in Guatemala and his primary language is Quiche. The Spanish interpreter was necessary because the Quiche interpreter could translate into Spanish, but not English.

Before the court accepted the plea, the following colloquy occurred:

"Q. *Mr. Chuc, have you had any drugs, alcohol or medication in the last 24 hours?*"

"A. *No, nothing.*"

[¶] . . . [¶]

"Q. Did you have ample opportunity to go over these change-of-plea forms with your attorney Miss Oliver today?"

"A. Yes."

2

"Q.     Prior to initialing and signing these forms, did you understand all the contents and all the consequences contained in these forms?"

"A.     Yes."

"Q.     And were these change-of-plea forms in their entirety translated for you from English into your native language?"

"A.     Yes."

[¶] . . . [¶]

"Q.     You understand, sir, that by pleading guilty today, you would be giving up these constitutional rights in this case:  your right to a speedy and public trial by jury, your right to confront and cross-examine all the witnesses in this case, your right to remain silent, and your right to present evidence and to have the court subpoena witnesses at no cost to you?"

"A.     Yes."

"Q.     And you, and you wish to give up those rights, correct?"

"A.     Yes."

"Q.     I'm told that this is the plea agreement that has been reached between you and the district attorney's office.  And that is if you plead guilty to counts one, two and three, the district attorney's office will dismiss the balance of the information and you and they agree that I am going to sentence you to 12 years in the state prison.  [¶]  Is that your understanding of the plea agreement that's been reached with you in this case?"

"A.     Yes, that's right."

[¶] . . . [¶]

"Q.     *And you understand, sir, that these three convictions will be considered to be three separate and independent serious and/or violent felony convictions, what we call Three Strike convictions, resulting in mandatory denial of probation, substantially increased penalties, and a term in state prison in any future felony case?  [¶]  You understand that is a consequence of pleading guilty to counts one, two and three?*"

"A.     *Yes, I understand.*"

3

"Q.	*And you also understand, sir, that because you are pleading guilty to Three Strikes, in any future felony case you could receive up to 25 years to life or more; you understand that?*"

"*A.	Yes, I know that, too.*"

"Q.	And you understand, sir, that if you are not a United States citizen, these pleas of guilty will result in your removal, deportation, exclusion from admission to the United States and a denial of naturalization; you understand that?"

"A.	I do understood, too."

"Q.	And you understand, sir, that as a consequence of this plea, you have to register as a sex offender pursuant to Penal Code section 290 for the rest of your life; you understand that's a consequence of this plea?"

"A.	Yes."

"Q.	And you understand that because you're pleading guilty to three counts of 288(a), you would be subjected to the Sexually Violent Predator law; you understand that?"

"A.	Yes."  (Italics added.)

At the conclusion of the hearing, the court found Chuc entered the plea "knowingly, intelligently and voluntarily," and accepted the plea.

Less than one month later, Chuc moved to withdraw his plea.  Chuc argued his plea was not knowing or voluntary because:  (1) he did not understand the meaning of the word "strike" and thus did not fully understand the consequences of his plea; and (2) at the plea hearing he suffered from substantial pain because of a hernia and was under the influence of prescription pain medication that impaired his judgment.

In support of these claims, Chuc testified he speaks a dialect of Quiche, a language spoken in his native country.  He acknowledged he had a Quiche interpreter, and

4

confirmed the interpreter (with the assistance of the Spanish interpreter) translated his attorney's explanation regarding the change-of-plea form and translated at the plea hearing. He said that although he understood most of the interpreter's translation, he did not "completely" understand the interpretation of the word "strike." Chuc said he questioned the interpreter about the word and "whatever the attorney said is what was interpreted to me."

Regarding his physical condition, Chuc testified that during the hearing he "felt a lot of pain" due to a hernia. He said it felt as if he was "being stabbed with a knife." He said the jail doctor had given him a medication called "Aferfil" to "calm the pain" the night before his change of plea hearing.

In opposing Chuc's motion, the prosecutor presented the testimony of Euketa Oliver, the attorney who represented Chuc at the plea hearing. Oliver testified that Chuc did not appear ill or under the influence of medication at the hearing, and Chuc never mentioned he was in any pain or on medication at the hearing. Oliver confirmed that she provided Chuc with a detailed explanation regarding the consequences of his guilty plea, including the meaning of a "strike" and the specific consequences of pleading to multiple strike charges. Oliver said Chuc appeared to understand her explanations. She said "I didn't use fancy words, no legalese . . . . If there was something that I said that didn't translate, the interpreter would let me know, can you use another word . . . ."

Consistent with this testimony, Interpreter Chaj testified that he recalled Oliver explaining the meaning and consequences of a strike to Chuc, and Chaj interpreted the attorney's explanation to Chuc. Chaj said he did not remember any problems

5

communicating with Chuc and confirmed his interpretations were accurate. Chaj indicated that although there is no specific equivalent Quiche word for "strike," he was able to accurately describe the meaning of a strike to Chuc by using other words. Chaj said he had received formal training in interpretation and had been working as a Quiche interpreter for about 13 years.

The prosecution also presented Chuc's medical records while in custody. The records did not show any prescription for a drug called "Aferfil" and reflect that he had received only Ibuprofen for pain.

After considering the evidence and argument, the court ruled Chuc did not show by clear and convincing evidence he had good cause to withdraw his guilty plea. The court found Chuc understood the consequences of his plea, and this understanding was confirmed by Oliver, Chaj, and Chuc's prior representations. The court also found unsupported Chuc's claims that his physical condition precluded him from knowingly waiving his rights. The court based this finding on its own independent recollections of Chuc's demeanor, Chuc's statements at the hearing, Oliver's testimony, and the fact that Chuc's medical records did not support his claims.

The court concluded that "based on all of this [evidence] and based on Ms. Oliver's testimony, the court feels very comfortable that at the time [Chuc] understood the consequences of pleading guilty to counts one, two, and three. . . . [T]he court feels very comfortable that that was explained to him in a variety of ways. [¶] As to Mr. Chuc's indication that he was in pain and suffering from pain, based on Mr. Chuc's testimony today, I didn't get the sense that if he was in pain, [it was] so overwhelming

6

that he didn't understand the nature of what he was doing. Ms. Oliver certainly didn't seem concerned at all in terms of whether or not he was in pain on that day. In fact, she stated nothing led her to believe that he was in any pain and . . . under the influence of any medication. [¶] . . . [¶] . . . The court cannot find based on the testimony today that somehow Mr. Chuc was in any type of pain that would cause the court any concern that he somehow was under duress or painful circumstances and was so overcome to exercise his free judgment . . . ."

## DISCUSSION

Chuc contends the trial court abused its discretion when it denied his motion to withdraw his guilty plea because: (1) he did not understand the consequences of pleading to a "strike"; and (2) he was in substantial pain and under the influence of medication and therefore did not knowingly and voluntarily waive his rights.

### I. *Legal Principles*

Penal Code section 1018 provides: "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." In general, "[m]istake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea." (*People v. Cruz* (1974) 12 Cal.3d 562, 566.) However, "[a] plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) The defendant has the burden to

7

show, by clear and convincing evidence, there is good cause for withdrawal of his or her guilty plea. (*Id.* at p. 1457.)

A trial court has broad discretion in ruling on a motion to withdraw a guilty plea. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.) On appeal, we must affirm the court's ruling, unless the defendant "show[s] a clear abuse of that discretion." (*Ibid.*) In evaluating challenges to the court's ruling, we "must adopt the trial court's factual findings if substantial evidence supports them." (*Ibid.*; *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) " 'All questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge. We cannot reverse [a court's] order if there is substantial evidence or a reasonable inference to be drawn from it which supports the order. Where two conflicting inferences may be drawn from the evidence it is our duty to adopt the one supporting the challenged order.' " (*People v. Harvey* (1984) 151 Cal.App.3d 660, 667.) The trial court may consider its own observation of the defendant and the credibility of the defendant when it decides whether to grant the change-of-plea motion. We are bound by the court's credibility determinations. (See *Fairbank, supra*, at p. 1254.)

## II. *Analysis*

The court found Chuc fully understood the consequences of the plea agreement and that Chuc's waivers were knowing and voluntary. These findings are supported by the record.

8

Chuc contends the trial court abused its discretion because he testified he did not understand the meaning of the word "strike." However, the court had a reasonable basis to find this testimony did not show he did not understand the consequences of his plea.

Chuc's attorney testified that she fully and clearly explained to Chuc the consequences of pleading guilty to the three counts, including the strike consequences. Interpreter Chaj corroborated this testimony and specifically recalled explaining the meaning of a strike. Oliver and Chaj both testified that Chuc manifested an understanding of the explanation. Additionally, before accepting the plea, the trial court asked Chuc if he understood that by pleading guilty to the three offenses, the offenses would be considered three separate and independent serious or violent convictions, and that the consequences of pleading guilty included mandatory denial of probation, substantially increased penalties, and a term in state prison in any future felony case up to 25 years to life. Chuc responded that he understood these consequences. Chuc also initialed line 7c of the change-of-plea form which identified the consequences of pleading guilty to the three counts. Chuc admitted the form was translated and explained to him in both Quiche and Spanish.

Despite this evidence, Chuc contends he could not have understood the meaning of a strike because there is no equivalent term for a "strike" in his native language. However, even assuming Chuc did not understand the word "strike" in isolation because of the difficulty of a word-for-word translation, the record shows that the court and defense counsel explained to him the consequences of pleading guilty to strike offenses, including the possibility of a 25-years-to-life sentence if he commits another felony. By

9

knowing the result of pleading to the three strike offenses, Chuc was properly informed of the consequences of the plea. On this record, the trial court reasonably rejected Chuc's contention that he did not understand the "strike" consequences.

We also reject Chuc's claim that the court abused its discretion because he was in substantial pain and/or he was under the influence of prescription medication that clouded his mind. At the motion-to-withdraw hearing, Chuc testified that he had been in substantial pain at the prior hearing. However, this testimony was inconsistent with the observations of others at the prior hearing and was not supported by the information in his medical chart. Other than his own statements, Chuc offered no corroborating evidence. Additionally, Chuc made several statements reflecting that he was seeking to withdraw his plea because he had changed his mind and not because his earlier plea was involuntary or coerced because of his physical pain.

The court had reasonable grounds for finding Chuc's testimony was not credible. The court, which was the same court that presided over the initial plea hearing, stated that it had not observed any indications that Chuc was suffering from pain that would have precluded him from making a voluntary and knowing choice. These observations were consistent with the testimony of Chuc's attorney and the information in Chuc's medical records. The court specifically asked Chuc during the initial plea hearing if he took any medication within the past 24 hours, and Chuc said "No."

The prosecution presented substantial evidence coupled with the trial court's independent observations to establish Chuc understood the consequences of his plea and

10

pleaded freely and voluntarily. The court did not abuse its discretion in denying Chuc's motion to withdraw his guilty plea.

## DISPOSITION

Judgment affirmed.


                                                              HALLER, J.

WE CONCUR:


NARES, Acting P. J.


McDONALD, J.


11