Filed 5/25/16  P. v. Salas CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B263567 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA077871) |
| v. | |
| DEBORAH SALAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden Zacky, Judge.  Affirmed.

Law Offices of James Koester, James Koester, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Supervising Deputy Attorney General, and William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.

Defendant and appellant Deborah Salas appeals from the denial of her motion to withdraw her no contest plea to one count of possession of methamphetamine for sale. (Health & Saf. Code, § 11378.) Defendant contends the trial court abused its discretion when it denied her motion to withdraw her no contest plea. She maintains her motion should have been granted because she showed by clear and convincing evidence that her plea resulted from the deprivation of her anti-anxiety medication after she was unexpectedly taken into custody during a court appearance. We affirm.

## PROCEDURAL BACKGROUND[1]

The District Attorney of Los Angeles County filed an information charging defendant with possession of methamphetamine for sale and alleging she had one prior conviction within the meaning of Health and Safety Code section 11370.2, subdivision (a)[2] and two prior convictions for which she served two prison terms within the meaning of Penal Code section 667.5, subdivision (b). Defendant pleaded not guilty and denied the special allegations.

On December 4, 2014, pursuant to a plea agreement, defendant pleaded no contest to the possession for sale charge and admitted the special allegations in exchange for a three-year term of incarceration. Defendant was released from custody pursuant to *People v. Cruz* (1988) 44 Cal.3d 1247, 1249 (*Cruz* waiver) until her January 15, 2015, sentencing hearing.

---

[1]    Because defendant appeals from the denial of her motion to withdraw her no contest plea, we will dispense with a separate recitation of the facts underlying her offense. As necessary to address defendant's arguments, we will address those facts below.

[2]    Respondent correctly notes the information incorrectly alleged defendant had a prior conviction within the meaning of subdivision (a) of section 11370.2 rather than subdivision (c). The trial court took defendant's admission to the prior conviction allegation consistent with the erroneous information but it is of no consequence as the allegation was ultimately dismissed when defendant was sentenced. Moreover, defendant did not contest the matter in the trial court and does not raise the issue on appeal.

The day before her sentencing hearing, defendant, represented by new counsel, moved to withdraw her plea. The trial court denied defendant's motion, and sentenced her to three years in state prison to be served in county jail.

## DISCUSSION

**The Trial Court Acted Within Its Discretion in Denying Defendant's Motion to Withdraw Her Plea**

### I.    Background

On December 2, 2014, defendant appeared in court, out of custody and on bond. At the hearing, defendant's bail agent requested the bond be exonerated and defendant remanded into custody. The trial court granted the request.

Defendant returned to court two days later on December 4, 2014. The trial court spoke to defendant about settling her case. It explained to defendant she faced a maximum eight-year term of incarceration, most cases settled for half of the maximum term which would be four years in her case, and the prosecutor had offered her a three-year term—i.e., less than half of the maximum term.

Defendant told the trial court her main concerns were her 10-year-old daughter and her cat. Defendant said, "If I get three years I'll take the three years, but can I get a month's stay right now?" The trial court responded it would approve a three-year sentence if the prosecutor and defense counsel agreed. It told defendant it would release her that day, pursuant to a *Cruz* waiver, so she could spend the holidays with her family. The trial court explained that under the *Cruz* waiver defendant was required to agree to return on the next court date. If defendant returned and did not commit any new offense during her release, the trial court would sentence her to a three-year term. If defendant failed to return or committed a new offense, it would sentence her to additional time. The trial court asked defendant if she would "like to do that?" Defendant responded, "Yes, sir. . . . For my daughter."

The trial court asked defendant if she was freely and voluntarily entering the plea agreement because it was in her best interest. She responded, "Because it is for my best interest for my daughter." She stated she had had sufficient time to discuss the case, including possible defenses, with her attorney. The trial court then took a waiver of defendant's constitutional rights to trial, to confront and cross-examine witnesses, to use the subpoena power of the court, and to not incriminate herself. It also advised her of the consequences of her plea.

Defense counsel stated he had defendant's case for several months and had discussed with her all possible defenses. He said he believed there might be a valid search and seizure issue and had discussed with defendant the likelihood such a motion would succeed. Defendant confirmed defense counsel had discussed with her possible defenses and a potential suppression motion.

Defendant pleaded no contest to possession for sale of methamphetamine and admitted she had one prior conviction within the meaning of Health and Safety Code section 11370.2, subdivision (a) and two prior convictions within the meaning of Penal Code section 667.5, subdivision (b). The trial court found defendant guilty, found the prior conviction allegations true, and set defendant's sentencing hearing for January 15, 2015.

On January 14, 2015, defendant filed a motion to withdraw her no contest plea. In this motion to withdraw her plea, defendant stated defense counsel did not advise her about a possibly viable motion to suppress evidence. Defendant contended law enforcement searched her hotel room where methamphetamine was found based on the erroneous belief that she was on formal probation and was subject to a warrantless search as a condition of her probation.

According to defendant, she had a long history of severe psychiatric conditions and mental health issues. She was taking "approximately" four potent psychiatric medications. When she was remanded into custody on December 2, 2014, she did not have access to her medication because she had not "completed her visit to the infirmary at the county jail." Thus, when she appeared in the trial court on December 4, 2014, she

4

was without the benefit of her medication and was "scared, timid, passive, suffering from anxiety and to say the least at a loss as to what took place."

In support of her motion to withdraw her plea, defendant submitted a letter from her treating physician, Dr. William Vickary. Dr. Vickary stated defendant "was not on her medications when she entered her guilty plea. Her mental state was compromised and she did not understand the consequences of doing so."

Defendant claimed she accepted the plea due to her "psychiatric issues" and her "desperate need to spend the holiday with her daughter." Defendant believed accepting the plea was the only way to get her medications. At the time she entered her plea, she was experiencing severe anxiety and depression.

At the February 23, 2015, hearing on defendant's motion to withdraw her plea, defendant stated, when she was taken off her medication and returned to court on December 4, she was "freaked out," "in shock," and "stressed out." She said, "my mind was just fogged out and I'm used to taking my meds. [¶] I'm really good when I take my meds on a daily basis."

Defendant said she wanted to be released so she could see her daughter. She "just couldn't leave her like that. I had to explain to her . . . ." She said her daughter did not live with her, but she had visitation with her daughter on weekends and holidays. Christmas was approaching, and her daughter would be staying with her for two and one-half weeks. Defendant explained, "I just thought about I couldn't leave her like that. I just—I couldn't leave her." She also thought about her cat and her parents, who were getting old.

Defendant testified she did not understand the plea deal when the trial court explained it. She was only thinking about being released from custody so she could see her daughter. Defendant believed the lack of medication contributed to her decision to accept the deal and she would not have taken the deal if she had been on her medication.

While defendant was in custody during the one month prior to the February 23 hearing on her motion to withdraw her plea, she received only one of her four psychiatric medications. When she did not take all of her medications, she was subject to psychotic

5

episodes, severe depression, anxiety, and "bipolar issues." Defendant's reaction to the deprivation of her medications was most acute shortly after she stopped taking them. With the passage of time, the reaction lessened. She testified she had no difficulty comprehending defense counsel's questions at the hearing on her motion to withdraw her plea and understood everything that was happening at the hearing.

During cross-examination, the prosecutor asked defendant what symptoms would have been visible at the plea hearing to alert those present that she was in a "shocked mental state." Defendant responded that was a question for her doctor. The trial court interjected, "I think there are any [*sic*] objective signs that a person could see when you just get off your meds that would demonstrate to us that you're not mentally there because the way you're acting today is very similar to how you acted at the time of the plea. [¶] You see what I'm saying? He's asking is there anything a person could see that would give them a clue you're struggling with a mental illness?" Defendant responded, "I don't know."

Relying on the reporter's transcript, the trial court then recounted in detail its discussion with defendant at her plea hearing. The trial court observed that at no time during their discussion did defendant say, "'I don't understand what you're saying, Judge,'" "'Judge, I'm having some mental issues right now,'" "'Judge, I'm unable to process what you're saying to me,'" or "'Judge, I'm anxious' or 'I'm freaked out' or 'I'm stressed out.'" It noted defense counsel at the plea hearing stated he had discussed with defendant the pros and cons of filing a suppression motion, and defendant acknowledged to the trial court she had that discussion with defense counsel.

The trial court said to defendant, "I got to be honest with you. You look good today. You look really lucid. That means you understand everything. [¶] You look pretty mellow. You're not agitated. [¶] This is exactly how you appeared on December 4th when I took your plea."

The trial court denied defendant's motion to withdraw her no contest plea. The trial court stated it had handled defendant's case for a long time, and defendant's demeanor had remained constant. It said, "Never during the course of these proceedings

6

nor on the day of the plea did she mention she had any type of mental health issue or was suffering from any type of anxiety that would affect the voluntariness of the plea. [¶] I think if the court were to accept the defendant's position that all defendants who enter a plea during the holidays and who want to be with their families during the holidays and have some type of a mental health concern they would be entitled to withdraw a plea, and I don't see that being the state of the law. [¶] So the motion is denied."

## II.    Application of Relevant Principles

Penal Code "[s]ection 1018 provides, in part: 'On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice.' The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his or her guilty plea. (*Ibid.*; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1457 [2 Cal.Rptr.2d 670].) 'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.' (*Nance*, at p. 1456.) The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [69 Cal.Rptr.2d 784, 947 P.2d 1321]; *Nance*, at p. 1457.) 'A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' (*Nance*, at p. 1456; see *Fairbank*, at p. 1254 ['A decision to deny a motion to withdraw a guilty plea . . . is final unless the defendant can show a clear abuse of [the trial court's] discretion.'].) 'Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.' (*Fairbank*, at p. 1254.)" (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.) A trial court abuses its discretion when it "exercise[s] its discretion in an arbitrary, capricious or patently absurd manner that result[s] in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

"To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or

any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin, supra,* 205 Cal.App.4th at p. 1416.)

Substantial evidence supports the trial court's determination that defendant's no contest plea was an exercise of her free judgment and did not result from the deprivation of her anti-anxiety medication. Defendant's interaction with the trial court at her plea hearing demonstrated a person fully engaged in the proceedings. Defendant understood and waived her constitutional rights and understood the trial court's explanation of a *Cruz* waiver. Also, as the trial court noted, defendant never expressed to the trial court at her plea hearing that she had any mental infirmity that prevented her from understanding the proceedings. Moreover, the trial court handled defendant's case for a long time and noted her demeanor remained constant over that time—i.e., she did not appear agitated at any time during the case regardless of whether she was taking or was deprived of her anti-anxiety medication. Specifically, the trial court observed that defendant's demeanor at the plea hearing and the hearing to withdraw her plea was the same. (*People v. Fairbank, supra,* 16 Cal.4th at p. 1254 [substantial evidence that a defendant was not impaired when entering a plea includes "the trial court's own observations of [the] defendant" at the plea hearing ].)

Defendant contends "there is substantial evidence that the deprivation of her medication *likely* caused her plea to have not been a voluntary exercise of her free will" and "*likely* created a situation in which much of [her] concern was getting out of custody so that she could secure the medication that had been suddenly cut off . . . ." (Italics added.) Instead, the record demonstrates that defendant's primary motivation for accepting the plea agreement—apart from the favorable three-year term—was her desire to be released from custody so she could be reunited with her daughter. Moreover, defendant's argument that the deprivation of her anti-anxiety medication "likely" caused her to enter the no contest plea so she could obtain her medication and her plea thus was not an exercise of her free will is not "clear and convincing" evidence that it did cause

8

her to enter the plea—i.e., that there was good cause to allow her to withdraw her plea. (*People v. Breslin, supra,* 205 Cal.App.4th at pp. 1415-1416.)

Defendant contends her argument that her plea resulted from the deprivation of her anti-anxiety medication and not from an exercise of her free will is supported by the fact that, by pleading no contest, she gave up the potentially meritorious suppression motion mentioned by defense counsel at the plea hearing. Defendant's trial counsel did not state the basis for the potential suppression motion at the plea hearing. On appeal defendant speculates about the basis for that potential motion, but only identifies a theory he acknowledges was unlikely to prevail. We see nothing in the record to indicate a suppression motion would have been granted.

Defendant claims her argument that her plea resulted from the deprivation of her anti-anxiety medication is supported by the fact that she gave up a viable defense that she merely possessed the methamphetamine for personal use. The evidence adduced at the preliminary hearing showed law enforcement recovered: a pouch that contained 19.1 grams of methamphetamine, including large crystalline chunks; nine clean little baggies; $606 in cash—four $100 bills, eight $20 bills, one $10 bill, five $5 bills, and 11 $1 bills; and a glass pipe. Notwithstanding that a pipe, presumably for personal use, was recovered, a police officer testified he believed defendant possessed the methamphetamine for the purpose of sales based on the quantity of the methamphetamine, the large chunks of methamphetamine, the number of empty baggies, and the fact that defendant showed no objective symptoms of having ingested methamphetamine. Given these facts, a defense of possession for personal use was tenuous at best. Defendant's decision to forego such a defense and to accept a plea bargain that included a below average period of incarceration was entirely rational.

In denying defendant's motion to withdraw her no contest plea, the trial court did not act in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. Accordingly, the trial court did not abuse its discretion. (*People v. Rodrigues, supra,* 8 Cal.4th at pp. 1124-1125.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KUMAR, J.*


We concur:


KRIEGLER, Acting P. J.


BAKER, J.

---

\*      Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.