Filed 1/15/21  P. v. Almazo CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077565 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN288698) |
| SANTIAGO G. ALMAZO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Affirmed.

Suzanne Antley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

On March 2, 2011, the San Diego District Attorney filed a complaint charging defendant Santiago G. Almazo with six counts of lewd acts on a

child under the age of 14 (Pen. Code,[1] § 288, subd. (a); counts 1-6); penetration of a person under the age of 16 with a foreign object (§ 289, subd. (i); counts 7-8 and 10-11); and sodomy of a person under the age of 16. (§ 286, subd. (b)(2); count 9.)

On July 10, 2019, pursuant to a negotiated disposition, defendant entered a plea of guilty to two counts of lewd acts upon a child. In return, the court dismissed the remaining charges. The court denied probation and sentenced defendant to eight years in state prison. On October 11, 2019, defendant hired private counsel and moved to withdraw his guilty plea. After an evidentiary hearing, the trial court denied his motion. Defendant obtained a certificate of probable cause and appealed. Affirmed.

STATEMENT OF FACTS

N. was about 11 years old when she moved with her mother and two sisters from Mexico to the United States. Once in this country, N.'s mother married defendant, her stepfather. Defendant's 19-year-old brother, Raymundo, moved in with the family.

When N. was 15 years old, she told her mother defendant was sexually abusing her. N.'s mother confronted defendant about the abuse, which he denied. N.'s mother then directed N. to report the abuse to her middle school counselor. The next day, N. told her counselor about the abuse and a deputy was called to interview N. During the interview, N. reported defendant over the previous three years had raped her numerous times.

Specifically, N. told the deputy that while her mother was at work, defendant would send her younger sisters to their aunt's home and defendant would then fondle her and have sexual intercourse with her. She estimated

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

this had occurred more than 50 times, beginning when she was 12 years old. N. disclosed the last incident of sexual abuse had occurred about three weeks earlier, when defendant entered her bedroom, grabbed her breasts, threatened to hit her, then took off his clothes and tried to force N. into having sexual intercourse. N. admitted during the interview that she was sexually active with Raymundo, defendant's younger brother. After the interview, Child Protective Services removed N. and her siblings from the home.

On February 8, 2010, N. met with a forensic interviewer. During the video-recorded interview, N. initially denied the sexual abuse by defendant. However, as the interview continued, N. told the interviewer defendant had started touching her sexually shortly after she arrived in the United States. At the time, defendant was 33 years old and she was 12 years of age. She reported that defendant would put his penis in her vagina, and the incidents included ejaculation and oral copulation. N. also told the interviewer about her consensual sexual relationship with defendant's brother.

On the day of the forensic interview, N. took a pregnancy test that came back positive. In August 2010, N. gave birth to a daughter. A DNA test revealed the child was Raymundo's.

DISCUSSION

Defendant argues the trial court erred in denying his motion to withdraw his guilty plea. Specifically, he argues his plea was not knowing or intelligent because before entering his plea, he did not have the opportunity to watch the forensic video in which N. initially recanted her testimony regarding the sexual abuse. He further argues this evidence would have created a doubt about his guilt if it had been presented at trial. Defendant also argues that at the time of his plea, he was unaware N. had a consensual

sexual relationship with his brother and there was a resulting pregnancy. We conclude the trial court did not abuse its discretion in denying his motion.

A. *Additional Background*

At the evidentiary hearing held in response to defendant's motion, defendant confirmed that prior to entering his guilty plea, the court asked if he had sufficient time to speak with defense counsel and review the allegations brought against him. He acknowledged on cross-examination that, with the assistance of an interpreter, he reviewed the change of plea form with his counsel and initialed and signed it. He also stated he had the opportunity to ask questions about the plea, but did not ask anything of the court.

In addition, defendant's former public defender testified at the hearing that on April 24, 2019, she met with the defendant and read through the police reports and the statements N. made to the police, contradicting defendant's testimony at the hearing. She confirmed this meeting took place with the assistance of a court-certified Spanish interpreter. Counsel also testified that she obtained the video of N.'s forensic interview, reviewed it and took six or seven paragraphs of notes based on its contents. She stated that the majority of the video was in English and any portions in Spanish were later repeated in English. With the assistance of an interpreter she read her notes to defendant, and he then did not appear to have any concerns or questions about the video or its contents.

Counsel further testified she advised defendant that the plea was in his best interests, but placed no undue pressure on him to enter a guilty plea. Indeed, counsel stated she explained that if they proceeded to trial, they had arguments they could make based on discovery and lack of admissions; and

4

that it was defendant's choice whether to accept the plea offer or proceed to trial.

Following the presentation of the evidence on defendant's motion, the court found defense counsel more credible than defendant regarding the information that had been available to defendant before he pleaded guilty. Specifically, the court was impressed by the fact defense counsel had taken notes of N.'s forensic video. In addition, the court did not find the failure to show the video to defendant was sufficient to allow withdrawal of the plea because defense counsel described to defendant what she saw and heard on the video. The court thus denied the motion, finding defendant's plea was voluntary and uncoerced. We find no error.

B. *Guiding Principles and Analysis*

Section 1018 authorizes a trial court to allow a defendant to withdraw a guilty plea for "good cause." To establish "good cause," a defendant must show by clear and convincing evidence that he or she was operating under a mistake, ignorance, or any other factor overcoming his or her free judgment. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*).)

Factors that can overcome the exercise of free judgment include inadvertence, fraud, duress or the prosecution's suppression of evidence favorable to the defendant. (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.) A plea, however, cannot be changed merely because a defendant has changed his or her mind. (*Ibid.*) " 'The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty. [Citation.]' " (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146 (*Weaver*).)

The decision to deny a motion to withdraw a plea rests in the sound discretion of the trial court; and, as a court of review, we must adopt the trial

court's factual findings if they are supported by substantial evidence. (*Breslin, supra,* 205 Cal.App.4th at p. 1416.) In examining the trial court's ruling, we must keep in mind that a guilty plea resulting from a plea bargain should not be set aside lightly. (*Weaver, supra,* 118 Cal.App.4th at p. 146.)

Here, the court properly exercised its discretion when it found defendant was not prejudiced, thereby rendering his plea involuntary, merely because he himself did not watch the video before he pleaded guilty. As noted, although defendant did not watch N.'s video-taped forensic interview, defense counsel did, took several paragraphs of notes, and then—with the assistance of a Spanish interpreter—reviewed them with defendant. Counsel was available to respond to any questions or concerns defendant might have had about N.'s interview, but there is no evidence he had any prior to pleading guilty. After weighing the credibility of defendant and defense counsel, the trial court found defense counsel credible, as noted, and thus found defendant was aware of the video and its contents before his plea.

Defendant nonetheless argues that had he seen the video before the plea he might have "picked up" on crucial elements of the recantation. Defendant's argument is based on speculation, and, in any event, does not support a finding his plea was involuntary or otherwise coerced, particularly in light of the court's finding that defense counsel reviewed the contents of the video with him before his plea. Moreover, there is no allegation or evidence that the prosecutor purposely withheld the video.

In summary, it is undisputed that defendant and defense counsel were well aware of N.'s forensic video; that defense counsel watched and listened to the video, and took considerable notes that she shared and discussed with defendant prior to his guilty plea; and that defendant then seemed unconcerned about the fact that he himself had not watched the video.

6

Substantial evidence supports the finding defendant was not prejudiced by his reliance on defense counsel regarding the contents of the video and its implications, if any, to his case.

Defendant also argues his lack of knowledge of N.'s pregnancy and her relationship with his brother Raymundo could have possibly undermined N.'s credibility and provided him with a viable defense at trial. However, there is no evidence, much less clear and convincing evidence (see *Weaver*, *supra*, 118 Cal.App.4th at p. 146), that his knowledge of such separately or together overcame his free will in deciding to plead guilty.

Moreover, defense counsel's review and discussion with defendant regarding N.'s forensic interview, the police reports, and other discovery support the inference that defendant was aware of the relationship between N. and his younger brother before the plea hearing. This finding is further supported by the fact that N. learned of her pregnancy on the day of her forensic interview and gave birth months *before* the district attorney filed criminal charges against defendant.

In any event, there is no evidence as to how defendant's knowledge (or lack thereof) of the relationship between N. and his brother, and N.'s resulting pregnancy, rendered defendant's guilty plea involuntary and coerced; or otherwise would have created a reasonable doubt about his *guilt*, inasmuch as it is less than certain that the "evidence" of N.'s relationship with Raymundo would have been admissible at trial. (See Evid. Code, § 782, subd. (a)(1) [requiring a defendant seeking to introduce evidence of the witness's prior sexual conduct to file a written motion accompanied by an affidavit containing an offer of proof concerning the relevance of the proffered evidence to attack the credibility of the victim]; see also *People v. Mestas* (2013) 217 Cal.App.4th 1509, 1514.)

Defendant's reliance on *People v. Randle* (1982) 130 Cal.App.3d 286 is misplaced. There, the reviewing court found an abuse of discretion by the trial court where a motion for new trial was denied, inasmuch as newly discovered evidence—20 declarations made by 17 individuals—did more than impeach the complaining witness. No such showing is made here.

In light of the above, we conclude the trial court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea.

DISPOSITION

The order is affirmed.

BENKE, J.

WE CONCUR:


McCONNELL, P. J.


HALLER, J.

8