Filed 7/12/16  P. v. Spragans CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>DAMEON SPRAGANS,<br><br>          Defendant and Appellant. | A142695<br><br>(Contra Costa County<br>Super. Ct. No. 05-110797-8) |

By plea agreement, Dameon Spragans entered a plea of guilty to charges of forcible rape while acting in concert with another person, forcible oral copulation while acting in concert with another person, and forcible sodomy while acting in concert with another person.  As part of this negotiated disposition, appellant agreed to testify truthfully for the prosecution in the trial of two co-defendants.  For its part, the prosecution dismissed all other charges and recommended that Spragans receive a sentence totaling 31 years in prison.

Spragans later reneged on his agreement to testify and moved to withdraw his plea.  That motion was denied, and he was sentenced to a total of 42 years in prison, the maximum prison time for the crimes he had admitted.  On appeal, appellant's appointed appellate counsel filed a brief asking this court to conduct an independent review of the record under *People v. Wende* (1979) 25 Cal.3d 436.  Counsel also informed appellant of his right to file a supplemental brief.  No such supplemental submission has been received.

1

Having reviewed the record independently, we find no issues that require briefing. We therefore affirm.

## I. BACKGROUND

### A. The Kidnapping and Sexual Assault of Doe[1]

Appellant and his cousins, Derrick Ware and Robert McNeally, spent the evening of February 13, 2010 at the Blue Macaw nightclub in the Mission District in San Francisco. Across the street from the Blue Macaw, at the Medjool nightclub, Jane Doe and a male friend, S. Mungia, were spending the evening with some friends of theirs. Appellant, Ware, and McNeally left the Blue Macaw at around 1:00 a.m., just as Doe and Mungia were leaving the Medjool.

Doe and Mungia, who were very drunk, tried to hail a cab to take them to a friend's house in San Francisco. Appellant, Ware and McNeally offered them a ride, which they accepted. All five then got into McNeally's black Ford Silverado truck, with McNeally driving, appellant in the front passenger's seat, and Ware in the backseat with Doe and Mungia. Doe and Mungia immediately passed out. Mungia awoke a short time later while the truck was crossing the Bay Bridge, headed east, and realized that appellant, Ware and McNeally were not dropping them off in San Francisco as promised.

While the truck continued to head east, appellant was making derogatory remarks to Mungia and Ware was fondling Doe in the backseat. At approximately 1:30 a.m., the group reached Richmond and McNeally pulled off the freeway so that appellant and Mungia could urinate by the side of the road. While Mungia and appellant were outside the truck, appellant punched Mungia in the face. Mungia fell to the ground, and appellant climbed back into the truck, which then sped off, leaving Doe alone in the company of appellant, Ware and McNeally. Mungia immediately called police to report the kidnapping of Doe.

Appellant, McNeally and Ware proceeded another four miles, and stopped along a road in San Pablo. By that point, Doe had awoken, and pleaded to be taken home, but

---

[1] The statement of facts is based in large part on the facts set forth in the probation report.

2

appellant told her she would "have to do something if we're going to take you home" and "we're going to put it in you." He told her she was gong to have to "suck [his] dick." Doe attempted to fight her way out of the vehicle, but stopped when McNeally brandished a gun and threatened to kill her if she did not do as she was told. In the backseat, Ware raped and sodomized Doe and then forced her to orally copulate him.

Ware pulled Doe out of the truck, where the sexual assault continued. At one point, he grabbed Doe by the head and threw her to the ground, breaking her nose. Doe was then pulled back into the vehicle, where she was force to orally copulate appellant, while McNeally placed his hand in her vagina. After that, she was again forced out of the truck. This time, the men took all of her belongings, including her clothes. Appellant, Ware and McNeally finally drove off, leaving Doe naked by the side of the road.

Doe ran to various nearby residences and found someone who gave her a blanket and called the police. Appellant, Ware and McNeally were arrested a few weeks later, after Mungia and Doe identified them on video images from the Blue Macaw, and police traced McNeally's truck to him based on descriptions of its make and model. Doe's blood was found in the truck. DNA evidence from vulva swabs confirmed the presence of Ware's semen and the presence of non-semen traces from McNeally in Doe's vagina. By the time police found McNeally's truck, weeks after the attack, he had ordered new license plates and decals and painted the truck silver.

### B. The Charges Against Appellant and His Co-Defendants, Appellant's Guilty Plea, and His Motion to Withdraw His Plea

Appellant, Ware and McNeally were charged by information, as amended on June 1, 2011, with the following offenses: one count of kidnapping for sexual purposes in violation of Penal Code section 209, subdivision (b)(1)[2] (Count 1); one count of forcible rape while acting in concert in violation of section 264.1 (Count 2); one count of oral copulation in concert in violation of section 288a, subdivision (d) (Count 3); one count of

---

[2] All subsequent statutory citations are to the Penal Code.

rape by a foreign object while acting in concert in violation of sections 264.1 and 289 (Count 4)[3]; one count of forcible sodomy in concert in violation of section 286, subdivision (d) (Count 5); and one count of assault with a semiautomatic firearm in violation of section 245, subdivision (b) (Count 6).[4]

After lengthy pre-trial proceedings, a joint trial was eventually set for all defendants for January 28, 2014. Appellant unsuccessfully moved for a continuance of the trial date, and this court denied a writ petition and a request for a stay of the trial on January 27, 2014. Appellant then agreed to plead guilty to Counts 2, 3 and 5 and to admit the charged sentencing enhancements under former section 12022.3, subdivision (b) (on Count 2), former section 12022.8 (on Count 3), and former section 12022.3, subdivision (b) (on Count 5). In exchange for this plea, the prosecution agreed to dismiss all remaining charges and recommend a sentence of 31 years in prison if appellant

---

[3] On December 14, 2011, the court granted appellant's section 995 motion to dismiss Count 4.

[4] As to appellant, these charges were accompanied by the following sentencing enhancement allegations: Count 1 (kidnapping for sexual purposes) alleged that appellant was armed with a firearm, in violation of former section 12022, subdivision (a)(1), and inflicted great bodily injury, in violation of former section 12022.7, subdivision (a); Count 2 (forcible rape in concert) alleged that appellant was armed with a firearm, in violation of former section 12022.3, subdivision (b), inflicted great bodily injury, in violation of former section 12022.8, and that the circumstances specified in section 667.61, subdivisions (a) through (e) (designating "one-strike" sex offenses punishable by life in prison), rape and forcible oral copulation in concert with others, in the course of a kidnapping, while armed, and having inflicted great bodily injury, were true; Count 3 (forcible oral copulation in concert) alleged that appellant was armed with a firearm, in violation of former 12022.3, subdivision (b), and inflicted great bodily injury, in violation of former section 12022.8, and also alleged several one-strike sentencing allegations under section 667.61; Count 4 (rape by a foreign object) carried enhancement allegations identical to those charged with Count 3; Count 5 (forcible sodomy in concert) carried enhancement allegations identical to those charged with Count 4; and Count 6 (assault with a semiautomatic firearm) carried sentencing enhancements allegations identical to those charged with Count 5.

4

provided truthful testimony on behalf of the prosecution in his co-defendants' joint trial. Absent the plea agreement, appellant would have been exposed to a total of 42 years in prison on the charges to which he pled and a life sentence for conviction on all charges.

On January 30, 2014, the court accepted appellant's plea after advising him of the constitutional rights he was relinquishing and after confirming a voluntary and knowing waiver of those rights, on the record. (See *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal. 3d 122, 132.) An "Agreement to Provide Truthful Testimony" executed by appellant and his counsel on February 20, 2014, memorializing the terms of his agreement to testify for the prosecution, expressly provided that the terms of appellant's plea bargain were conditioned on "waiver of appellate rights."

Following his negotiated guilty plea, appellant moved three times to have his appointed counsel replaced (see *People v. Marsden* (1970) 2 Cal.3d 118), reneged on his agreement to testify for the prosecution, and filed a motion to withdraw his guilty plea (see *People v. Breslin* (2012) 205 Cal.App.4th 1409). In support of his motion to withdraw his plea, appellant argued that he had felt pressured by the prosecution when he agreed to plead guilty, was not given adequate time to consider the prosecution's proposed terms, had come under familial pressure not to testify against his "blood relatives," and he did not realize he would be denied conjugal visits if he went to prison for the crimes he admitted. The court denied each of appellant's *Marsden* motions after confidential in camera hearings.[5] It also denied appellant's motion to withdraw his guilty plea, finding that he had not established cause for the withdrawal. On April 18, 2014, the court sentenced appellant to a state prison term totaling 42 years. And on June 6, 2014, the court denied a motion to reconsider the sentence pursuant to section 1170, subdivision (d), entered judgment imposing the sentence, and dismissed the remaining charges on motion by the prosecution.

---

[5] We have reviewed the confidential transcripts of those proceedings.

Appellant, through counsel, timely filed a notice of appeal, accompanied by a request for probable cause to appeal pursuant to section 1237.5. (See *People v. Maultsby* (2012) 53 Cal.4th 296, 298.) On July 15, 2014, the court denied appellant's request for a section 1237.5 certificate of probable cause, indicating "Defendant waived his appellate rights when he accepted PC 1192.5 disposition dismissing life-top counts." Appellant's counsel filed an amended notice of appeal on July 29, 2014, attaching her declaration stating: "Based on my personal recollection and the notes in my file, the defendant did not waive his appellate rights," and "The June 6, 2014 docket and minute order . . . erroneously indicates that the defendant waived his appellate rights."

Appellant, without assistance of his counsel, filed an additional notice of appeal on July 23, 2014, which included a handwritten portion stating in part: "I raised issues on ineffective counseling. after realizing I was in a potential conflict of interest on 2/6/14. After co-counsels revealed conflicts issues towards my counsel. Counsel moved to same office as my co-defendant prior counsel still in which is Alternate defender counsel was a public defender before she came to Alternat defender office. Which was 12-15-13 Jan 29-14 counsel pressured me to give a statement telling me I would receive a lesser sentence then the current 31 years which was part of a package plea bargain. I agree to those terms. 1/30/14 I enter a plea base on that understanding. 2-6-14 . . . Counsel which Betty Barker stated to me that I would not be receiving a lesser sentence then the 31 yr. Base on the fact that co-counsel raise a conflict of interest . . . Her exact words was "Because of politics"! After that I went through Several Marsden motion raising all the error Betty Barker caused. Those dates are (12-10-14) (2-28-14) (3-21-14) and in between those Dates I underwent Betty's tactical persuasion that effected my Better Judgment." (*Sic.*) In addition, appellant claimed that he was "given permission" to withdraw his pleas by the judge who heard one of his *Marsden* motions, but that a different judge, the judge who heard his motion to withdraw his plea, denied the motion nonetheless.

6

### III.  DISCUSSION AND DISPOSITION

Upon our independent review of the record, we find no issues that warrant further briefing.  We have specifically examined the record as it bears on appellant's negotiated plea, agreement to testify for the prosecution, change of mind about testifying, and the motions he made after entering his guilty plea, including his *Marsden* motions.  We find no error in the trial court's denial of appellant's *Marsden* motions, his motion to withdraw his guilty plea, his motion for reconsideration of his sentence, or his motion for a certificate of probable cause.  The judgment and the sentence are affirmed.

_____
Streeter, J.

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.