Filed 12/5/24  P. v. Duckworth CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JOEL MARTIN DUCKWORTH,<br><br>    Defendant and Appellant. | C099323<br><br>(Super. Ct. No.<br>CRF210007374) |

Defendant Joel Martin Duckworth appeals a judgment entered following his no contest pleas to assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)), maintaining a place for the sale of controlled substances (Health & Saf. Code, § 11366), and possession of a controlled substance (Health & Saf. Code, § 11377), as well as his failure to complete the residential treatment program contemplated by his plea agreement.

Defendant raises three arguments on appeal.  First, he complains his right to due process was violated when the trial court failed to honor the terms of his plea agreement for which defendant requests specific enforcement of the agreement's terms.  Defendant

---

[1]  Undesignated statutory references are to the Penal Code.

1

next complains the trial court abused its discretion when it refused to allow him to withdraw from the plea agreement because there had been no "meeting of the minds as to crucial components of the plea" agreement. (Capitalization omitted.) Finally, defendant complains his counsel rendered ineffective assistance for failing to "adequately advise appellant of the terms of the plea agreement." (Capitalization omitted.) We will affirm the judgment.

## I. BACKGROUND

*A. The Charges and Plea Agreement*

The People's information charged defendant with robbery (§ 211; count 1), assault with a firearm (§ 245, subd. (a)(2); counts 2 & 3), and false imprisonment by violence (§ 236; counts 4 & 5). The information further alleged defendant personally used a firearm under section 12022.53, subdivision (b) in the commission of count 1 and used a firearm under section 12022.5, subdivision (a) in the commission of all counts.

Defendant's jury trial started on March 8, 2022. The parties later agreed to continue the matter to March 16, 2022, with the understanding that defendant could be released to a treatment program or supervised while released on his own recognizance.

On March 16, 2022, the trial court approved the negotiated plea agreement resolving the matter by adding to the information a count of assault with a deadly weapon (§ 245, subd. (a)(1); count 6), maintaining a place for the sale of controlled substances (Health & Saf. Code, § 11366; count 7), and possession of a controlled substance (Health & Saf. Code, § 11377; count 8) to which defendant pleaded no contest. In exchange, the remaining counts and allegations were dismissed.

The plea agreement further provided that defendant would not be immediately sentenced and would be on supervised release pending entry into a residential treatment program to be selected in coordination with the public defender's social worker; upon completion of the program, defendant would be permitted to withdraw his plea to assault with a deadly weapon nunc pro tunc. If, after completion of the residential treatment

2

program, defendant remained free of violations while on supervised release on his own recognizance for a year, he would be allowed to withdraw his plea to maintaining a place for the sale of controlled substances nunc pro tunc and would then be sentenced on only the misdemeanor possession charge.

The length of the residential treatment program had not been negotiated, although the trial court suggested a program of "six months to one year, whichever, so long as it's a good program and it complies with what you need to have done." Similarly, the exact time for defendant to enter the residential treatment program was not specified. However, the trial court admonished defendant not to commit any offenses or "blow[] it while you're pending that entry into the program," and the court set dates to monitor defendant's entry into and progress in the treatment program. Accordingly, it appears the parties understood that defendant should enter the residential treatment program as soon as reasonably practicable.[2] In fact, the court set the first review date for a month out, but remarked "I am expecting to see you before that, though, because you are going to be getting into a program more quickly than that. Okay?" The court further admonished defendant that if he failed to comply with the plea agreement then all charges would be on his record and would carry consequences for possible sentences going forward. Finally, the court warned that if defendant failed to comply with the agreement, he would not be allowed to withdraw his plea.

B.    *Defendant's Failed Efforts at Residential Treatment*

Due to defendant's need to restore his Medi-Cal health insurance to access funds to pay for treatment, his need to have and recover from knee surgery following

---

[2] According to the district attorney's declaration filed in opposition to defendant's later motion to withdraw his plea, that attorney spoke openly with defendant's counsel "about the need for defendant to go right into a residential treatment program due to his level of addiction."

restoration of Medi-Cal, and the lack of bed availability, it took defendant approximately seven months to enter his residential treatment program of choice, Empire Recovery Center (Empire). Defendant requested and received extensions in short increments for these delays. Empire was a 90-day program, authorized through Medi-Cal in 30-day increments. Defendant entered the Empire program in October 2022 and was expelled in November 2022 for violating a no visitation rule in place because of COVID-19.[3] Nonetheless, defendant's attorney reported to the trial court that defendant was in the process of being admitted to another residential treatment program, Visions of the Cross, but a bed was not currently available. The court and the People acquiesced in allowing defendant that opportunity, and the court admonished defendant to comply with all the rules of his next program.

Defendant was still pending admission to Visions of the Cross in December 2022, but had made progress and was awaiting an open bed. Defendant was admitted to the Visions of the Cross program on January 18, 2023.

As of March 9, 2023 (almost one year out from defendant's plea agreement), he was still participating in Visions of the Cross, but that program had expressed concern about defendant's disruptive behavior and lack of commitment. Defendant explained there had been difficulties because of differences in "values" leading to "some unfortunate events," but defendant stated he had worked with the program director and others to address those issues. The trial court admonished defendant to humbly approach the issues and "search yourself to change it." While commenting that defendant's agreement had put "sentencing out about a year," the court elected to give defendant

---

[3] According to a letter from Empire submitted with defendant's presentence probation report, defendant entered the program on October 5, 2022, and was discharged on November 14, 2022, with credit for 40 days' participation. Defendant was "discharged for violating program rules" and "had a difficult time adjusting to the structure of the program and abiding by its rules."

additional "time to finish the in-patient portion." Defendant was expelled from the program on March 13, 2023, and the People asked for the matter to be set "to address [defendant] and his inability to follow through with the plea bargain he entered into," noting this was defendant's second program.

In April 2023, defendant reported he had entered outpatient treatment, and in May 2023, defendant informed the trial court that following his discharge from residential treatment, he had entered "IOP," which he described as a 90-day outpatient program with the same curricula as his previous residential programs minus the residential component, and that he was thriving. While commending defendant on his continued commitment to treatment, the court determined it was reasonable to set the matter for sentencing (a notion agreed to by defendant's attorney) and sentencing was set for June.

C.     *Defendant's Request to Withdraw from the Plea Agreement and Sentencing*

At the first sentencing hearing on June 22, 2023, the trial court indicated its intent to follow probation's sentencing recommendations, noting defendant had not complied with "a series of preconditions to some benefits" of his plea agreement. Defendant initially requested a *Marsden*[4] hearing, but later asked for and was granted a two-week continuance to allow different defense counsel to be present. In the interim, on July 12, 2023, the probation department recovered suspected methamphetamine and a methamphetamine pipe in a search of defendant's residence. At the next hearing, defendant was represented by different counsel and obtained a continuance to allow him to explore filing a motion to withdraw his plea, which he filed on August 3, 2023.

Defendant's motion argued his plea was not knowing, intelligent and voluntary and that he failed to understand the consequences of his plea. Specifically, defendant argued his plea was not knowing because the requirements concerning the treatment

---

[4]  *People v. Marsden* (1970) 2 Cal.3d 118.

5

component of his agreement shifted during negotiations, resulting in acceptance of "an unclear term, which was accepted in haste."

According to defendant's declaration, he understood the People's original offer was that sentencing would be delayed 18-months for him to complete a three-month residential treatment program and complete other conditions of the agreement. The People withdrew this offer, but settlement became possible again during trial after the victims changed part of their story. Because defendant did not want to be in custody while awaiting admission to a residential treatment program, he accepted certain modifications to the original deal, including "instead of a three-month treatment program it turned into a six to twelve month program." Defendant complained "[t]hese changes in terms were not discussed properly with me, especially the impossibility of fulfilling the lengthier treatment program given my religious beliefs." Nonetheless, defendant accepted the deal "[b]ecause [he] was tired and scared and wanted to go home . . . ." Defendant admitted he was discharged from Empire after 40 days and discharged from Visions of the Cross after 60 days, but complained he did not realize he could not combine his participation in these programs or use an outpatient treatment program to comply with the conditions of the agreement. Defendant fired his attorney because that attorney agreed defendant had not complied with the terms of his plea agreement.

Defendant's motion to withdraw his plea was heard on August 14, 2023. Defendant argued he thought he had to complete only a three-month residential program, whereas the agreement he ultimately entered into required a 6- to 12-month program. He completed "chunks of time at residential programs" as well as a 90-day outpatient program,[5] but did not understand this would not satisfy the conditions of his plea. The People countered that the agreement required defendant to complete a residential

---

[5] The record does not support this assertion, as defendant did not complete his outpatient treatment program.

treatment program without specification of length, defendant had been given multiple opportunities to complete a residential treatment program (including authorized delays to accommodate various issues from funding to medical conditions), but defendant had not completed a residential treatment program and had ultimately been arrested for possession of a controlled substance. The trial court observed the length of the program had possibly been specified given notations to the change of plea form, but that the application of any specification was moot because defendant had failed to complete a residential program of any length. Ultimately, the court denied defendant's motion, finding he had made an insufficient showing. Defendant knew the essential terms of his agreement, and there was "no substantive difference between what he thought the deal was and what he thought was a good one versus what happened here."

The trial court then proceeded to sentencing, indicating it was inclined to grant defendant probation in light of his rehabilitative efforts and progress, despite his noncompliance with the terms of the plea agreement and his picking up a new case. The People agreed to dismiss defendant's new case in the interests of justice, as well as to dismiss count eight in the current case, which the trial court did. The court suspended imposition of sentence and placed defendant on two years of formal probation under specified terms and conditions. Defendant timely appealed and received a certificate of probable cause

## II. DISCUSSION

### A. *Due Process*

Defendant complains his right to due process was violated when the trial court failed to honor the terms of his plea agreement and requests specific enforcement of the agreement's terms. We are unpersuaded.

"Plea negotiations and agreements are an accepted and 'integral component of the criminal justice system and essential to the expeditious and fair administration of our courts.' [Citations.] Plea agreements benefit that system by promoting speed, economy,

and the finality of judgments." (*People v. Segura* (2008) 44 Cal.4th 921, 929.) "Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles. (*People v. Shelton* (2006) 37 Cal.4th 759, 767, citing Civ. Code, § 1635 et seq.) Acceptance of the agreement binds the court and the parties to the agreement. [Citations.] ' "When a guilty [or nolo contendere] plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement." ' " (*Segura*, at pp. 930-931.) "Due process requires that both the defendant and the prosecution abide by the terms of the plea agreement . . . ." (*People v. Silva* (2016) 247 Cal.App.4th 578, 587, citing *People v. Villalobos* (2012) 54 Cal.4th 117, 182.)

Defendant's due process argument is premised on the assumption that the trial court set the sentencing hearing only because of a misunderstanding that there was a one-year limit to complete the preconditions of his plea agreement. This is a red herring. Although the trial court made some comments suggesting a timing element (which neither party ever contradicted nor objected to), the more serious issue and actual trigger necessitating a sentencing hearing was defendant's failure to complete any residential treatment program whatsoever.

When the People learned in April 2023 that defendant had failed a second residential treatment program, they asked for the matter to be set as soon as possible "to address [defendant] and his inability to follow through with the plea bargain he entered into." The next month the trial court (as agreed to by defendant's counsel) determined it was reasonable to set the matter for sentencing. By the time of the August 2023 sentencing hearing, it had been approximately 17 months since defendant had agreed to complete a residential treatment program. However, he had not done so. Defendant does not challenge that the plea agreement required the completion of a *residential* treatment program. In fact, his own declaration in support of his motion to withdraw from the plea

8

agreement clearly sets forth that all iterations of this agreement included completion of a *residential* treatment program.

Moreover, while defendant is correct that the parties' plea agreement did not expressly specify a time limit for completing such residential program (although reasonable limits might be inferred from the lengths of any such anticipated program), there was also no provision affording defendant the right to enter *multiple* residential treatment programs, much less a third program after defendant failed two previous programs. Rather, the agreement clearly stated defendant was to complete a single residential treatment program. Accordingly, because defendant violated his plea agreement by failing to complete a residential treatment program—twice—he cannot show he was prejudiced by any alleged misinterpretation the trial court made in also potentially imposing a deadline for him to complete the preconditions of his plea agreement. Had the trial court proceeded to sentence defendant while he was still engaged in a residential treatment program, we would entertain this argument, but that is not the case here.

B.    *Defendant's Motion to Withdraw His Plea*

On appeal, defendant argues the trial court abused its discretion when it refused to allow him to withdraw from the plea agreement because there had been no "meeting of the minds as to crucial components of the plea" agreement. (Capitalization omitted.) We disagree.[6]

---

[6] Respondent is mistaken in arguing this claim should be dismissed. We do not construe defendant's request for a certificate of probable cause asking permission to appeal the trial court's denial of his motion to withdraw his plea as equating to defendant taking an appeal from a trial court's order denying such motion, rather than from defendant's judgment. Accordingly, there is no portion of defendant's appeal that requires dismissal, and we will address the merits of his claims. (See, e.g., *People v. Francis* (1954) 42 Cal.2d 335, 336-338 [reviewing the merits of the denial of defendant's motion to withdraw his plea after dismissing the portion of the appeal taken directly from the trial

9

"A guilty plea may be withdrawn any time before judgment for good cause shown. (Pen. Code, § 1018; [citation].)" (*People v. Hunt* (1985) 174 Cal.App.3d 95, 102; accord, *People v. Cruz* (1974) 12 Cal.3d 562, 565.) "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.] But good cause must be shown by clear and convincing evidence." (*Cruz*, at p. 566; see *Hunt*, at p. 103.) In addition, a defendant must demonstrate that he would not have accepted the plea but for the mistake. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416.) "Grant or denial of a motion [to withdraw] lies within the trial court's sound discretion after consideration of all factors necessary to effectuate a just result; a reviewing court will not disturb its decision unless abuse is clearly demonstrated." (*Hunt*, at p. 103.) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*Ibid.*) "[A] reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, defendant sought to withdraw from his plea agreement after failing to comply with it by arguing his plea was not *knowing* because the requirements concerning the treatment component of his agreement shifted during negotiations, resulting in acceptance of "an unclear term, which was accepted in haste." The trial court rejected his argument, finding defendant knew the essential terms of his agreement, and there was "no substantive difference between what he thought the deal was and what he thought was a good one versus what happened here." Substantial evidence supports this determination.

As we have explained, there is no question that defendant understood he was entering into an agreement that required him to complete a residential treatment program as the first step in the process of obtaining certain specified benefits of his plea

court's order denying defendant's motion]; *People v. Johnson* (2009) 47 Cal.4th 668, 679 [defendant must obtain a certificate of probable cause to appeal denial of a motion to withdraw from a guilty plea].)

agreement. Defendant's own declaration admits as much. As such, the trial court did not abuse its discretion. (*People v. Hunt*, *supra*, 174 Cal.App.3d at p. 103.) Nor would allowing defendant to withdraw his plea after he failed to abide by the agreement's terms promote a just result. (*Ibid.*; § 1018.) Defendant was expressly warned of the consequences of failing to comply with the plea agreement. He was also admonished that he would not be permitted to withdraw from his plea if he failed to comply with that agreement, and defendant confirmed that he understood. Defendant has not shown by clear and convincing evidence that he did not understand that he had to complete a residential treatment program (*People v. Cruz*, *supra*, 12 Cal.3d at p. 566) or that he would not have entered into that agreement but for his mistake (*People v. Breslin*, *supra*, 205 Cal.App.4th at p. 1416). His apparent change of heart following his failure to complete two residential treatment programs is not good cause. (*Ibid.* [" '[a] plea may not be withdrawn simply because the defendant has changed his [or her] mind' "].)

Nor are we persuaded by defendant's argument that he did not understand there was a time limit for completion of his obligations under the agreement or that he must be permitted to withdraw from the plea agreement because it is unenforceable for failure of the parties to agree on a material term, specifically, how long defendant had to complete the requirements of that agreement. Again, defendant knew he needed to complete a residential treatment program and failed two of them, thus violating his agreement as explained earlier. The asserted ambiguity regarding the length of time to finish his obligations under the plea agreement does not change the fact that he had already failed to comply with the agreement's first precondition to being allowed to withdraw any of his pleas. Accordingly, his claim fails.

C.      *Ineffective Assistance of Counsel*

Finally, defendant complains his counsel rendered ineffective assistance for failing to "adequately advise appellant of the terms of the plea agreement." (Capitalization

11

omitted.)  This claim fails because defendant cannot establish counsel's alleged deficient performance was prejudicial.

"[T]o establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance."  (*People v. Mickel* (2016) 2 Cal.5th 181, 198; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.)  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland*, at p. 697.)  To demonstrate prejudice, a defendant must show "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*Mickel*, at p. 198.)

Here, defendant complains his counsel failed to adequately inform him of the required length for his residential treatment program, that participation in treatment programs could not be combined to meet that requirement, and that he had a limited amount of time to comply with his obligations under the plea agreement.  However, any asserted shortcomings of counsel could not have prejudiced him because, as we have explained at length throughout this opinion, it was defendant's expulsion from two residential treatment programs that resulted in his breach of the plea agreement's requirement that he complete a residential treatment program, which in turn triggered sentencing.

Although the agreement did not specify that defendant could make multiple attempts at completing this requirement, he was afforded the opportunity to complete two separate residential treatment programs and was expelled from both.  As such, his argument that he did not know he could not combine treatment programs is unsuccessful.  He did not complete two programs and then attempted to combine them in an effort to

12

meet the agreement's requirements (under which scenario he might have an argument he was prejudiced). Rather, defendant completed no residential treatment programs. This is true despite the trial court and the People accommodating numerous delays over several months so that defendant could attend the nonsecular residential treatment program of his choice, the Empire program. Defendant's arguments on reply that he would not have entered into the plea agreement had he known that he had to complete the Visions of the Cross residential treatment program are not supported by the record as defendant's declaration in support of his motion to withdraw his plea did not say he would not have entered the plea agreement under these circumstances. Further, this argument completely ignores that this was defendant's second residential treatment program, attempted only after he was expelled from his preferred program. Accordingly, defendant has not demonstrated any of his attorney's complained-of deficiencies prejudiced him.

## III. DISPOSITION

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
EARL, P. J.

/s/
BOULWARE EURIE, J.

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.