Filed 6/11/26  P. v. Ramirez CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064522 |
| v. | (Super. Ct. No. 06CF3739) |
| MAURO RAMIREZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Reversed and remanded.

Raymond M. DiGuiseppe, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A defendant's mere presence at a crime does not constitute substantial evidence that the defendant directly aided and abetted the commission of that crime. (See *People v. Hin* (2025) 17 Cal.5th 401, 493.)

On June 10, 2006, there was a drive-by shooting from a minivan in which one victim died and another victim survived. Two weeks later, police arrested 19-year-old defendant Mauro Ramirez, who said he was high on drugs in one of the rear seats of the van during the drive-by shooting.

The People charged Ramirez with murder, attempted murder, a gang crime, and related enhancements. A gang expert testified at trial that Ramirez was with other gang members during the shooting. The expert opined that when a gang member possesses a gun in a vehicle, then everyone in the vehicle would likely know about it. The expert also opined that when gang members commit crimes with other gang members, each person usually has a "loosely defined" role to play during the crime.

The trial court instructed the jury on the (now defunct) natural and probable consequence theory. The jury found Ramirez guilty as charged. The court imposed a sentence of life without the possibility of parole (LWOP), plus 25 years to life, plus 20 years. This court affirmed the judgment on direct appeal. (*People v. Ramirez* (Sept. 28, 2012, G045434) [nonpub. opn.].)

In 2020, Ramirez sought to vacate the murder and attempted murder convictions and to be resentenced. (See Pen. Code, § 1172.6.)[1] The trial court denied the petition at the prima facie stage, but this court reversed. (*People v. Ramirez* (Nov. 2, 2022, G060355) [nonpub. opn.].) This court held that the jury's true findings on the gang and drive-by shooting

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021-2022) renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) Further undesignated statutory references are to the Penal Code.

special circumstance allegations established that Ramirez had the required intent to kill (the mens rea), but it did not establish that Ramirez was the shooter, or that he directly aided and abetted the shooter as a matter of law (the actus reus). On remand, we directed the trial court to issue an order to show cause (OSC), and to conduct an evidentiary hearing.

At the evidentiary hearing, after reviewing the trial transcripts, the trial court denied Ramirez's petition. The court found that the gang expert's testimony proved beyond a reasonable doubt that Ramirez directly aided and abetted the shooter during the drive-by shooting.

We disagree. The expert's testimony was largely speculative, and it does not constitute substantial evidence as to what Ramirez might have actually done to aid and abet the shooter (the actus reus).

Thus, we reverse the trial court's order denying Ramirez's section 1172.6 petition. On remand, we direct the court to grant the petition, vacate the murder and attempted murder convictions, and resentence Ramirez on the remaining substantive gang offense.

I.

FACTS AND PROCEDURAL BACKGROUND

On June 10, 2006, at about 8:00 p.m., a minivan with tinted windows drove very slowly past Esteban C. (Esteban), John K., (John) and others gathered on a Santa Ana sidewalk. The driver of the minivan mad dogged (menacingly stared at) the group on the sidewalk. Approximately five people were inside of the minivan.

The van disappeared from sight, but then returned about five to 10 minutes later. The minivan slowed down as it passed the group on the sidewalk; the sliding side door opened, and a person seated behind the driver

3

fired five shots in the direction of Esteban, John, and the others; Esteban died as a result of his injuries and John was injured. The shooting occurred in territory claimed by the Bishop Street criminal gang. Esteban and John were not members of the gang, but they were members of a tagging crew associated with the Bishop Street gang.

About two weeks later, Ramirez and Jaime G. (Jamie) were arrested after they were chased by the police who were responding to a report of a man with a gun. During the chase, Jamie was seen stuffing something in a garbage can. A gun was recovered from the garbage can, which was the same gun used in the earlier drive-by shooting.

While being interrogated by the police, Ramirez admitted being in the minivan when Esteban and John were shot. Ramirez acknowledged that the driver of the minivan and the front seat passenger were Walnut Street gang members, but Ramirez claimed he did not know their names. Ramirez told the police he had been "hanging out" and "kick[ing] back" with the Walnut Street gang for about a year, but he had not been jumped into the gang. Police asked Ramirez: "You backup the neighborhood but you . . . you haven't been jumped in yet? Right?" Ramirez responded: "Yeah."

Ramirez claimed he had been smoking crack and was in a rear seat of the van, and that the group had been riding around for about an hour before the shooting occurred. Ramirez stated the other passengers in the van had not discussed shooting anyone; it was just something that happened on the spot. Ramirez claimed he was not aware there was a gun in the van until the moment when the drive-by shooting occurred. Police asked Ramirez "let's say somebody, there's a shooting going down okay . . . then you gotta backup your homeboy okay and shoot back. Is that fair to say? That's expected of a gang member." Ramirez responded, "Hmm nah not really."

*Trial Court Proceedings*

The People filed an information charging Ramirez with murder, attempted murder, and active gang participation. The information alleged two special circumstances: (1) discharging a firearm from a motor vehicle with the intent to inflict death; and (2) that Ramirez was a participant in the gang, and the murder was carried out to further the activities of the gang. The information further alleged Ramirez committed the homicide crimes for the benefit of a gang, and that he was vicariously liable for another's act of discharging a firearm causing death.

At the jury trial, the People's gang expert, Detective Matthew McLeod, opined that Ramirez was an active participant in the Walnut Street criminal street gang on the date of the shooting, and that the shooting was committed for the benefit and to promote criminal conduct by the gang.

Detective McLeod also testified generically regarding gang culture. McLeod opined that an affiliate or member of a gang demonstrates loyalty to the gang by serving as a "backup" during the commission of crimes by, among other things, serving as a "lookout" or a getaway driver, procuring weapons, or simply being physically present when another gang member is committing a crime. McLeod also opined that gang guns are generally owned or possessed by the gang as a whole, and they are used to commit criminal acts and to defend against rivals. McLeod opined that if a gang member possessed a gun in a vehicle, the presence of the gun "is often discussed" with the other gang members in the vehicle. McLeod further opined that if a gang member goes to commit a crime with several other people, each would usually have a "loosely defined" role in committing the crime.

The trial court instructed the jury on the (now defunct) natural and probable consequences theory. That is, the jurors were instructed that

they could find Ramirez guilty of the charged crimes if he aided and abetted an assault with a firearm, and the crimes of murder and/or attempted murder were a natural and probable consequence of the assault. The court also instructed the jury on a direct aider and abettor theory.

The jury found Ramirez guilty of the charged crimes, and found true the charged sentence enhancements. The trial court imposed a prison sentence of LWOP, plus 25 years to life, plus 20 years. Except for a minor adjustment to a fine, the judgment was otherwise affirmed on direct appeal. (*People v. Ramirez, supra*, G060355.)

*Section 1172.6 Proceedings*

On January 21, 2020, Ramirez filed a petition to vacate his murder and attempted murder convictions and to be resentenced. (§ 1172.6.) The trial court denied the petition at the prima facie stage. This court reversed. This court held that the jury's true findings on the gang and drive-by shooting special circumstances established that Ramirez had the required intent to kill (the mens rea), but those findings did not establish that he was the shooter, or that he directly aided and abetted the shooter as a matter of law (the actus reus). We directed the trial court to issue an OSC, and to conduct an evidentiary hearing. (*People v. Ramirez, supra,* G060355.)

The California Supreme Court granted the People's petition for review and held the matter pending its decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*). After filing the *Curiel* opinion, the Supreme Court dismissed the grant of review and remanded the matter to this court, which directed the trial court to issue an OSC and to conduct further proceedings.

On August 8, 2024, the trial court held an evidentiary hearing and denied Ramirez's petition.

6

## II.

## DISCUSSION

Ramirez contends that Detective McLeod's testimony does not constitute substantial evidence to support the trial court's finding that he directly aided and abetted the shooter. We agree.

We accept the trial court's findings to the extent they are supported by substantial evidence. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415–1416.) ""Substantial evidence" means that evidence which, when viewed in light of the entire record, is of solid probative value, maintains its credibility and inspires confidence that the ultimate fact it addresses has been justly determined."" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 804.)

""Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." [Citation.] However, "[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities . . . ." [Citation.] ""By definition, 'substantial evidence' requires *evidence* and not mere speculation.""" (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286 (*Soriano*).)

In this discussion we will: A) consider the recent changes to the homicide statutes; B) consider the current law as it relates to direct aiders and abettors; and C) analyze the law as applied to the facts in this case.

### A. Changes to the Homicide Statutes

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature."

(§ 188, subd. (a)(1).) "Malice is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (§ 188, subd. (a)(2).) As to murder, the actus reus is the perpetrator's act, and the mens rea is malice aforethought. (§ 187, subd. (a).)

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437, which amended sections 188 and 189. (Stats. 2018, ch. 1015, §1, subd. (f).) The legislation effectively eliminated the natural and probable consequences doctrine as it relates to murder, and narrowed the scope of the felony-murder rule. However, the legislation did not eliminate direct aider and abettor liability for murder or attempted murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 848 ["Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder"], superseded by statute on other grounds as stated in *People v. Oyler* (2025) 17 Cal.5th 756, 836.)

Senate Bill No. 1437 also added a procedure "for those convicted under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) Under section 1172.6, a petitioner must first file a petition containing a declaration that he or she is eligible for relief, including that he or she "could not presently be convicted of murder . . . because of changes to Section 188 or 189" effectuated by Senate Bill No. 1437. (§ 1172.6, subds. (a)(3), (b)(1); see *Strong*, at p. 708.) Upon the filing of a facially sufficient petition, the trial court must "determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) If the court concludes such a showing has been made, it must issue an OSC and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1).)

At the evidentiary hearing, the prosecution bears the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under the law as amended by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3).)

8

The trial court acts as an independent fact finder and determines whether the evidence establishes that the petitioner is ineligible for resentencing. (*People v. Cody* (2023) 92 Cal.App.5th 87, 110.)

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the *procedural history* of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3), italics added.)

*B. Direct Aider and Abettor Liability*

"Except for strict liability offenses, every crime has two components: (1) an act or omission, sometimes called the actus reus; and (2) a necessary mental state, sometimes called the mens rea." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (§ 31.)

"'[A] person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime.'" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 295–296.) Under "direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice

9

aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.'" (*People v. Gentile, supra,* 10 Cal.5th at p. 843.)

Proof of aider and abettor liability requires proof of a culpable actus reus on the part of the aider and abettor in the form of some conduct by him that in fact assisted the achievement of the crime. (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.) As phrased in the pattern instruction on aiding and abetting, CALCRIM No. 401, the People must present substantial evidence that, "The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." An important corollary to this basic principle, also covered in CALCRIM No. 401, is that a defendant's mere presence at the scene of a crime is not sufficient to constitute aiding and abetting, nor is the failure to take action to prevent a crime, although these are factors the jury may consider in assessing a defendant's criminal responsibility. (*People v. Richardson* (2008) 43 Cal.4th 959, 1024.)

*C. Application and Analysis*

"Speculative testimony by a gang expert does not constitute substantial evidence to support a gang enhancement." (*Soriano, supra,* 65 Cal.App.5th at p. 288.) In *Soriano*, defendant Soriano was walking with another gang member, Ceja, when they were detained by two deputy sheriffs. During a pat down search, a deputy discovered Soriano was carrying a knife. (*Id.* at p. 281.) The prosecution charged Soriano with the crime of carrying a concealed weapon, and further alleged that he committed the crime for the benefit of his gang, Varrio Viejo. (*Id.* at p. 282.)

During Soriano's trial, gang expert Deputy Ayala testified that "carrying a concealed weapon is a 'common' crime committed by Varrio Viejo

10

gang members, and the most frequently concealed weapon is a knife. Ayala testified a gang member will 'typically' let other gang members know when they have a weapon on them . . . . Ayala said: 'When gang members carry weapons, they do it to facilitate the commission of their crimes. They have the weapons to go and commit crimes.'" (*Soriano, supra,* 65 Cal.App.5th at p. 283.) A jury found true the gang enhancement, but Soriano argued on appeal that Ayala's expert's opinion did not constitute substantial evidence to support the gang enhancement. The Court of Appeal agreed. (*Id.* at p. 290.)

In *Soriano,* the appellate court found that "beyond Deputy Ayala's opinion, there were no facts establishing Soriano had the specific intent to *promote* the Varrio Viejo gang by carrying the *concealed* knife." (*Soriano, supra,* 65 Cal.App.5th at p. 289.) "Deputy Ayala also opined Soriano's crime was committed 'in association with' the Varrio Viejo gang because Ceja was with Soriano at the time they were detained, and gang members 'typically' tell other gang members when they are carrying weapons. But the fact that Soriano was with another gang member does not establish that the crime of carrying a concealed knife on his person was gang related. [Citations.] More importantly, Ayala's opinion regarding Soriano's presumed conversation with Ceja about carrying the concealed knife was based on "'mere speculation as to probabilities'" rather than "'reasonable inferences drawn from'" observable facts." (*Id.* at p. 290.)

Likewise, in *People v. Ramon* (2009) 175 Cal.App.4th 843, 847 (*Ramon*), police stopped defendant while he was driving a stolen truck in his gang's territory. Another gang member was sitting in the passenger seat; police found a handgun under the driver's seat. (*Ibid.*) The prosecution charged defendant with receiving a stolen vehicle, firearm offenses, and related gang enhancements. (*Id.* at p. 848.) A gang expert opined that

11

possessing a gun and driving a stolen truck in gang territory benefited the gang. (*Id*. at pp. 847–848.) Defendant argued on appeal that the gang expert's opinion did not constitute substantial evidence to support the gang enhancement, and the Court of Appeal agreed. (*Id*. at pp. 850–851.)

"The People's expert simply informed the jury of how he felt the case should be resolved. This . . . could not provide substantial evidence . . . . There were no facts from which the expert could discern whether [the defendant and the other gang member] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence." (*Ramon*, *supra*, 175 Cal.App.4th at p. 851.) "While the People's expert's opinion certainly was one possibility, it was not the only possibility. And . . . a mere possibility is not sufficient to support a verdict." (*Id*. at p. 853.)

Here, similar to *Soriano* and *Ramon*, the gang expert in this case, Detective McLeod, generically testified that gang members usually know that there is a firearm available to the gang prior to committing a crime. McLeod also testified that gang members each generally have a role to play during the commission of a crime. But obviously, McLeod could not testify as to what Ramirez may have actually done to assist the shooter during the drive-by shooting on June 10, 2006, because he was not present. Nor did Ramirez—or any other witness—provide any evidence indicating what Ramirez may have done to assist in the shooter beyond merely be present in the minivan. (See *People v. Hin, supra,* 17 Cal.5th at p. 493 [a defendant's mere presence at the scene of a crime does not constitute substantial evidence that the defendant directly aided and abetted in the commission of that crime].)

In *Curiel*, the Supreme Court clarified that "'proof of aider and

12

abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*Curiel*, *supra*, 15 Cal.5th at p. 467.)

Here, there was substantial evidence that one of the gang members in the minivan was the direct perpetrator who shot at the group of people on the sidewalk. There was also substantial evidence that Ramirez had the required mens rea as an aider and abettor because the jury found true the gang and drive-by shooting special circumstance allegations, which required that Ramirez had the intent to kill. (See § 190.2, subd. (a)(21), (22).) However, what is crucially lacking here is substantial evidence of Ramirez's alleged "'actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'" (*Curiel*, *supra*, 15 Cal.5th at p. 467.)

In short, we hold that there is not substantial evidence that Ramirez was the shooter, or that Ramirez directly aided the shooter in the commission of the murder or attempted murder crimes. (See *Soriano*, *supra*, 65 Cal.App.5th at p. 286 ["""'By definition, 'substantial evidence' requires *evidence* and not mere speculation'"""].)

Thus, we reverse the trial court's order denying Ramirez's section 1172.6 petition. On remand, we direct the court to grant the petition, vacate the murder and attempted murder convictions, and resentence Ramirez on the remaining substantive gang offense.

The Attorney General argues Ramirez "admittedly 'backed up' Walnut Street gang members and the only reasonable inference is that he was present for the purpose of assisting them in their mission in rival gang

13

territory." We disagree.

While it is true that Ramirez admitted that he would back up Walnut Street gang members if there were a fight, he did not admit that he would back up gang members in the case of a shooting. In fact, Ramirez denied he would back up a shooting: "Hmm nah not really." Further, even if we were to assume that evidence established that Ramirez was present for the purpose of assisting in the drive-by shooting, that assumption does not provide substantial evidence of what Ramirez might have actually done to assist the shooter. (See *People v. Pettie* (2017) 16 Cal.App.5th 23, 57–58 ["'Mere presence at the scene of a crime which does not itself assist its commission . . . does not amount to aiding and abetting'"].)

The Attorney General also argues *People v. Campbell* (1994) 25 Cal.App.4th 402 (*Campbell*), compels a different result. We disagree.

In *Campbell*, T. Branch and his girlfriend D. Sester were standing in front of an apartment complex and "arguing about whether to buy more crack cocaine." (*Campbell*, *supra*, 25 Cal.App.4th at p. 406.) The couple saw defendant Campbell and defendant Smith initially walk by them, and then return several minutes later. "When Campbell and Smith were in front of them, Branch heard Campbell say something like 'this is a robbery, break yourself.' Branch understood [Campbell] to mean empty your pockets." (*Ibid*.) When Branch refused, "Campbell responded by pointing a handgun an inch from Branch's head." (*Ibid*.) Branch then "swatted the gun away" and ran off; Campbell gave chase and fired the gun at Branch. (*Ibid*.) As this was going on, "Sester attempted to back away from Smith, but Smith grabbed her by the hair, saying, "'Where the f*ck are you going, b*tch.'"" (*Id*. at p. 407.) Smith forced Sester into a driveway, where Smith twice raped Sester, and twice forced Sester to orally copulate him. (*Ibid*.)

14

On appeal, Smith argued there was insufficient evidence to support his conviction for the attempted robbery of Branch under an aider and abettor theory. (*Campbell*, *supra*, 25 Cal.App.4th at pp. 407–408.) The Court of Appeal disagreed. (*Id*. at p. 410.) The court acknowledged that Smith's mere presence would be insufficient by itself to impose liability, but "'the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.'" (*Id*. at p. 409.) The court found: "Here, virtually all of these factors are present. Smith did not independently happen by the scene of the crime. He had walked by Branch and Sester with Campbell and thus was aware of their isolation and vulnerability at that time and place. Smith then decided with Campbell to return to them. Together they approached Branch and Sester, stopping closely in front of them. Their concerted action reasonably implies a common purpose . . . ." (*Ibid*.) And while Campbell gave chase when Branch fled, "Smith remained in position in front of Sester. Since there is no evidence he was surprised by Campbell's conduct or afraid to interfere with it, the jury could reasonably conclude that Smith assumed his position in front of Branch and Sester to intimidate and block them, divert suspicion, and watch out for others who might approach. Such conduct is a textbook example of aiding and abetting." (*Id*. at p. 409.)

The instant case is clearly distinguishable from *Campbell*. There was no evidence—either direct or circumstantial—that Ramirez instigated the drive-by shooting, facilitated the shooting, or did anything to directly aid and abet the shooter. Under these circumstances, the fact that Ramirez was present in the van during the drive-by shooting is simply not sufficient evidence to establish Ramirez's liability as a direct aider and abettor.

15

## III.

## DISPOSITION

The trial court's order denying Ramirez's section 1172.6 petition is reversed. On remand, the court is directed to grant the petition, vacate the murder and attempted murder convictions, and resentence Ramirez on the remaining substantive gang offense.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


SCOTT, J.

16